**John DOE, Appellant,**

v.

**Joseph DiGENOVA, et al.**

**No. 84–5571.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 10, 1985.

Decided Dec. 17, 1985.

As Amended Dec. 17, 1985.

---

Michael A. Lubin, Washington, D.C., for appellant.

Charles F. Flynn, Asst. U.S. Atty., with whom Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees.

Arthur B. Spitzer, Elizabeth Symonds and Nancy L. Cook, Washington, D.C., were on brief, for American Civil Liberties Union Fund of the National Capital Area, amicus curiae, urging reversal.

Armin U. Kuder and Walter G. Birkel, Washington, D.C., were on brief, for Washington Psychiatric Society, amicus curiae, urging remand with modifications.

Before WALD, EDWARDS and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

Opinion concurring in the judgment filed by Circuit Judge STARR.

WALD, Circuit Judge.

John Doe appeals from the district court's order granting summary judgment to the defendants and dismissing Doe's suit for damages, injunctive, and declaratory relief. The appeal involves the United States Attorney's right to issue a grand jury subpoena for a veteran's medical records, and the Veterans' Administration's ("VA") authority to release a veteran's medical records in response to a grand jury subpoena. Doe argues that a variety of constitutional and statutory provisions prohibited the subpoena and the release of his records in this case. We conclude, contrary to the district court's determination below, that the VA's disclosure of the records was not authorized under 38 U.S.C. § 3301, and remand the case to the district court for a redetermination of Doe's other statutory and constitutional arguments in light of that conclusion.

## I. THE BACKGROUND

On October 22, 1981, Assistant United States Attorney David Stanley ("AUSA" or "Stanley") sent a letter to John Doe[1] advising him that he was being investigated by a grand jury concerning allegations that he had received false payments of unemploy- ment compensation. Stanley asked Doe to meet with him on November 3, and offered to arrange for appointed counsel before the meeting. At the meeting Stanley apprised Doe and his court-appointed counsel of the evidence against him, gave Doe the oppor- tunity to plead guilty to multiple felony charges, and attempted to enlist Doe's as- sistance in an ongoing investigation.

On the day of that meeting, without no- tice to Doe or his counsel, Stanley caused a grand jury subpoena to be issued to the Director of the Veterans' Administration for the production of Doe's claim file, "in- cluding any medical records maintained for the claimant." J.A. at 10. In compliance with the terms of the subpoena, the VA turned Doe's medical records over to two Metropolitan Police Department officers. These records contained information about Doe's psychiatric treatment in the Veter- ans' Administration's mental health clinic for what has been diagnosed as schizophre- nia paranoia.

Upon learning of the VA's release of Doe's psychiatric records, Doe's counsel in- formed the AUSA that he believed that Doe's legal rights in the privacy of his medical records had been violated, and threatened to take legal action unless the prosecutor took certain specified steps to protect their confidentiality.[2] Negotiations over an agreement broke off when Doe's counsel asserted that he would not be satis- fied with anything less than a district court consent order embodying his demands.

On January 6, 1982, Doe filed a com- plaint[3] in the district court alleging that

---

**1.** The plaintiff-appellant was granted leave to proceed under the pseudonym "John Doe" by Order of the United States District Court for the District of Columbia. *Doe v. Ruff,* No. 82–0025 (D.D.C. Jan. 6, 1982), *reprinted in* J.A. at 8–9.

**2.** Doe's counsel demanded that the prosecutor (1) return the records to the VA; (2) tender all copies to Doe's counsel; (3) seal any notes made from the records for possible later evi- dentiary use; (4) make no presentation of the records to the grand jury; (5) allow no fur- ther dissemination of the records; (6) make no further efforts to obtain Doe's records; and (7) make no use of the information con- tained in the records.

*Doe v. Harris,* 696 F.2d 109, 110 (D.C.Cir.1982).

**3.** Doe named the following defendants: Charles F.C. Ruff, United States Attorney for the District of Columbia; David Stanley, Assistant United States Attorney for the District of Columbia; the Metropolitan Police Department of the District of Columbia; Sgt. Edward Yatty, Metropolitan Police Department of the District of Columbia; Sgt. Reginald Smith, Metropolitan Police Depart- ment of the District of Columbia; Essie Morgan, Director, Washington Regional Office, United States Veterans' Administration; Robert P. Nimmo, Administrator of Veterans' Affairs, Unit- ed States Veterans' Administration. The Honor- able Stanley Harris was once a party to this

the subpoena and the disclosure of his VA records violated his rights.[4] In addition to his request for declaratory relief, Doe asked the court to order that the files be transferred to his counsel, to order that defendants' notes relating to the files be sealed, to enjoin the U.S. Attorney from further disclosing the information, to enjoin the U.S. Attorney's Office from seeking the records again, and to enjoin the VA from disclosing Doe's files in the future.

On February 26, 1982, the district court granted the defendants' motion to dismiss the case as moot. The court found that the AUSA's assertions that he had no present interest in the records and that all personnel who read the records had been instructed not to divulge their contents, made it "extremely unlikely" that there would be any further divulgence of the information.

On appeal, this court reversed the district court's holding that the case was moot. *Doe v. Harris*, 696 F.2d 109 (D.C. Cir.1982). The court explained that it appeared "from the record that Doe remains under investigation for fraudulent receipt of unemployment compensation, and that the likelihood that he will be indicted is appropriately described as a reasonable expectation." *Id.* at 112. Moreover, the court found that the VA continued to assert the legality of the disclosure, and supplied no indication that it would not again disclose Doe's files without affording him

notice and opportunity to object. *Id.* at 113. Finally, the court held that the possibility of money damages kept the suit vital. *Id.* at 114. Thus, the court remanded to the district court for consideration of the case on its merits.[5]

On remand, Doe amended his complaint to include an action for money damages against the United States Government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680.[6] In the course of discovery, AUSA Stanley stated that he had two reasons for issuing the subpoena. He declined to disclose the first reason claiming that to do so would breach the grand jury secrecy rule. Fed.R.Crim.P. 6(e). He did, however, set forth this justification in a sealed affidavit which he submitted to the district court, and he invited the court to use its power to disclose its contents under Fed.R.Crim.P. 6(e)(3)(C)(i) (disclosure may be made "when so directed by a court preliminarily to or in connection with a judicial proceeding").

Stanley asserted that his second reason for issuing the subpoena was that

after talking with Mr. Doe and his attorney, it appeared that Mr. Doe might be preparing to assert an insanity defense to any charges that might be brought against him, and I felt that it would be important to ascertain whether such a defense might be available, and how

action in his capacity as successor United States Attorney to Mr. Ruff, and Joseph diGenova succeeded Judge Harris as United States Attorney and as a named defendant. Mr. Nimmo was succeeded by Harry N. Walters as Administrator of Veterans' Affairs and as a defendant in the action.

4. Doe based his constitutional claims on the fourth, fifth, and sixth amendments, and the constitutional right to privacy. Doe also alleged violations of the D.C. physician-patient privilege, D.C. Code § 14–307, the D.C. Mental Health Information Act of 1980, D.C. Code §§ 6–2001–6–2062 (1981), and the federal statute governing confidentiality of veterans' records maintained by the VA, 38 U.S.C. § 3301 ("Veterans' Records Statute"). Finally, Doe alleged that the AUSA had abused the process of the grand jury by issuing the subpoena.

5. Although it found that there was a live "case or controversy" in the constitutional sense, the

court left for the district court's "discrete determination on remand the separate question" whether Doe's complaint presents a claim on which equitable relief is appropriately granted. *Doe v. Harris*, 696 F.2d at 112. The district court has not yet had occasion to address this question, and in view of our disposition of this case, we too deem it advisable that the question first be considered by the district court.

6. Doe's FTCA claim is directed only against the VA's action in disclosing the records—not the AUSA's efforts to obtain them. *See* Standard Form 395, Claim for Damage, Injury, or Death, *reprinted in* J.A. at 4 (claim for damages submitted to Veterans' Administration and claiming "invasion of privacy based upon the disclosure by the Veterans' Administration of the claimant's psychiatric and medical records"). Doe has never sought damages from the individual defendants in this suit.

strong such a defense might be, before deciding further on the course of any further investigation of Mr. Doe.

Answers to Interrogatories Addressed to Defendant David Stanley, *reprinted in* J.A. at 85.

The parties filed cross-motions for summary judgment, and after hearing oral arguments, the district court granted the defendants' motion. First, the court held that the VA's release of the files comported with the Veterans' Records Statute, 38 U.S.C. § 3301, since it came under the provision permitting disclosure pursuant to process of a United States court, and under the provision permitting disclosure when required by another department of the United States government. Since the disclosure was sanctioned by the Veterans' Records Statute, the court held that no tort action could rest against the VA under the FTCA. J.A. at 102. As for the AUSA's actions, the court deemed the request for the records reasonable, and found that local law does not provide for tort liability where the intruding government agent had reasonable grounds for the intrusion. The district court also held that the D.C. Mental Health Information Act, D.C. Code §§ 6–2001–6–2062 had no relevance to the case, because the local law yields to the federal Veterans' Record Statute which permitted the disclosure in this case. J.A. at 108–09. The court also rejected Doe's claim under the District of Columbia Physician-Patient Privilege, D.C. Code § 14–307, holding that the statute is an evidentiary privilege which does not give rise to a cause of action. J.A. at 108.

Addressing Doe's constitutional claims, the court held that Doe retained a fourth amendment expectation of privacy in the records because of their confidential and intimate nature. Nonetheless, it held that the subpoena in question was reasonable since it was not overly broad or indefinite, and since inquiring into a possible insanity defense was relevant to the investigation. *Id.* at 103–05. The court then analyzed the constitutional right to privacy that the Supreme Court recognized in *Whalen v. Roe,*

429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Although it held that these were the "kind of matters that fell within the constitutionally protected right to privacy," it concluded that the limited disclosure in this case was not a violation of that right. J.A. at 105–06. Throughout its analysis, the court relied only on the second of the AUSA's justifications—to determine the viability of a possible insanity defense. It is not clear whether the district court ever opened the sealed affidavit, but if it did, it certainly did not take account of its contents in its analysis.

Finally, the court summarily rejected Doe's other allegations of constitutional violations since there had been no testimonial communication to trigger the fifth amendment's self-incrimination protections, and since no adversarial criminal proceedings had yet been initiated so as to trigger the sixth amendment's right to counsel. J.A. at 106–07. Doe appeals all but these last two of the district court's legal rulings.

## II. DISCUSSION

### A. *The Veterans' Records Statute*

Doe challenges the district court's holding that the *VA*'s disclosure of his records was permitted by the Veterans' Records Statute. 38 U.S.C. § 3301. Section 3301 provides that:

> (a) All files, records, reports, and any other papers and documents pertaining to any claim under any of the laws administered by the Veterans' Administration and the names and addresses of present or former personnel of the armed services, and their dependents, in the possession of the Veterans' Administration shall be confidential and privileged, and no disclosure thereof shall be made except as provided in this section.

The statute goes on to list various exceptions, including:

> (2) When required by process of a United States court to be produced in any suit or proceeding therein pending.

(3) When required by any department or other agency of the United States Government.

The district court held that disclosure was appropriate in this case under either of these exceptions. However, the court mistakenly failed to apply the 1976 amendments to § 3301. Those amendments added what is now subsection (j), which provides that "[e]xcept as provided in subsection (i)(1) of this section [disclosures related to credit information] any disclosure made pursuant to this section shall be made in accordance with the provisions of section 552a of title 5 [the Privacy Act]."

Congress enacted subsection (j) because it knew that the Privacy Act conflicted in some aspects with the Veterans' Records Statute. The Senate Committee explained that "in situations in which either law would apply, the stricter of the two applicable provisions is operable. By 'stricter' the Committee means the provision more protective of the confidentiality of the individual's records." S.Rep. No. 892, 96th Cong., 2d Sess. 11 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad. News 1299, 1308.[7] In this case the two statutes do conflict in

both of the relevant areas, and it is therefore necessary to examine the stricter of the two—the Privacy Act.[8]

1. *Disclosure to a Court*

■ The Veterans' Records Statute provides that the Administrator shall disclose files "[w]hen required by *process* of a United States court to be produced in any suit or proceeding therein pending." 38 U.S.C. § 3301(b)(2) (emphasis added). Applying this statute, the district court held that grand jury subpoenas qualify as *"process."* The language of the Privacy Act is different in this regard, however. It allows disclosure only "pursuant to the *order* of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11) (emphasis added). It is, therefore, unnecessary for us to review the district court's finding that a grand jury subpoena meets the "required by process" standard.[9] We need only decide whether a federal grand jury subpoena is an "order of a court of competent jurisdiction" under the Privacy Act. In order to answer this question, it is first helpful to describe the way in which federal grand jury subpoenas are issued.

**7.** The amendment incorporating the provisions of the Privacy Act was a minor addition to a series of amendments designed to clarify the Veterans' Administration's authority to disclose veterans' records to various health agencies. The purpose of subsection (j) was to make clear that the post-Privacy Act amendments did not displace the Privacy Act. *See* S.Rep. No. 892, 96th Cong., 2d Sess. 11 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad. News 1299, 1308. On the floor of the House, the sponsor of the bill explained that the Senate provisions made no substantive changes in this area of law. *See* 122 Cong.Rec. 18,629 (1976) (remarks of Rep. Satterfield). This statement reflects the understanding that even without the amendment, the Privacy Act would still control the disclosure of veterans' documents. *See* H.R.Rep. No. 704, 94th Cong., 1st Sess. 5 (1976).

**8.** Notwithstanding the addition of subsection (j) specifically incorporating the terms of the Privacy Act, the Veterans' Administration has not modified the two regulations that apply the provisions of the Veterans' Records Statute that are relevant in this case.

38 C.F.R. § 1.506(a) (1984) provides that:

(a) All records or documents required for official purposes by any department or other agency of the U.S. Government or any State unemployment compensation agency acting in an official capacity for the Veterans Administration shall be furnished in response to an official request, written, or oral, from such department or agency.

38 C.F.R. § 1.511(b) (1984) provides that:

(b) Where the process of a United States court requires the production of documents or records (or copies thereof) contained in the Veterans Administration file of a claimant, such documents or records (or copies) will be made available to the court out of which process has been issued.

These regulations were promulgated in 1968, six years before Congress' enactment of the Privacy Act, and eight years before Congress' amendment to the Veterans' Records Statute. To the extent to which they are inconsistent with our interpretation of the Privacy Act, we deem them invalid as contrary to statute.

**9.** We express no view on this question which, although no longer relevant to the Veterans' Records Statute, might still have relevance in some other statutes.

**a. *The nature of a federal grand jury subpoena***

While a federal[10] grand jury subpoena is issued under the authority of a court, the court has no substantive involvement in a particular subpoena unless the subpoenaed party challenges it. *See In re Grand Jury Proceedings (Schofield I)*, 486 F.2d 85, 90 (3d Cir.1973) ("court exercises no prior control whatsoever" upon the use of subpoenas). Nor does the grand jury necessarily approve or even have knowledge of a subpoena prior to its issuance.[11] *See United States v. Santucci*, 674 F.2d 624, 627 (7th Cir.1982) (U.S. Attorney may "fill in blank grand jury subpoenas without actual prior grand jury authorization"), *cert. denied*, 459 U.S. 1109, 103 S.Ct. 737, 74 L.Ed.2d 959 (1983); *United States v. Kleen Laundry & Cleaner, Inc.*, 381 F.Supp. 519, 523 (E.D.N.Y.1974) ("absence of a sitting grand jury when a subpoena is issued is not disturbing" if return date is set for a day when grand jurors would be in session). Rather, grand jury subpoenas are issued at the request,[12] and in the discretion of the prosecuting attorney involved in the case,[13] just as other subpoenas are issued at the request, and in the discretion of, any private litigant. *See* Fed.R.Civ.P. 45.

The United States Attorney's Office has considerable latitude in issuing subpoenas. It has been held that the government is not required to make a preliminary showing of reasonableness or relevancy before issuing a subpoena. *See United States v. Dionisio*, 410 U.S. 1, 15–16, 93 S.Ct. 764, 772–73, 35 L.Ed.2d 67 (1973); *In re Grand Jury Investigation (McLean)*, 565 F.2d 318, 320–21 (5th Cir.1977); *In re Grand Jury Proceedings (Hergenroeder)*, 555 F.2d 686, 686 (9th Cir.1977). Even when a subpoena *duces tecum* is involved, and hence the fourth amendment may be implicated,[14] no prior authorization for the subpoena has been required. *See United States v. Miller*, 425 U.S. 435, 446 n. 8, 96 S.Ct. 1619, 1625 n. 8, 48 L.Ed.2d 71 (1976); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 209, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946).

Although failure to comply with a grand jury subpoena is punishable as criminal contempt,[15] Fed.R.Crim.P. 17(c), one seek-

**10.** The analysis of federal grand jury subpoenas may vary widely from the subpoena practice in some states. *Cf. Moore v. United States Postal Service*, 609 F.Supp. 681 (E.D.N.Y.1985). In *Moore*, the court held that the civil subpoena did constitute a "court order," and explained that "the judge who approved the subpoena used the words 'so ordered,' and that New York law requires a 'court order' for the issuance of subpoenas of this type." *Id.* at 682. The court distinguished the New York practice from the federal practice where subpoenas are issued by the clerk of the court. *Id.*

**11.** In this sense, the term "grand jury subpoena" can be a bit misleading, inasmuch as it implies a grand jury decision to compel testimony or the delivery of documents. It is important to realize that a grand jury subpoena gets its name from the intended use of the testimony, or documentary evidence, not from the source of its issuance. *See Schofield I*, 486 F.2d at 90.

**12.** Rule 17 of the Federal Rules of Criminal Procedure provides that:

A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served.

The "party" that the rule speaks of in the grand jury context is, of course, the United States, which is represented by the United States Attorney.

**13.** The government does have some internal guidelines calling for prior approval of subpoenas in certain contexts. *See e.g.*, Department of Justice, *Federal Grand Jury Practice* 63 (1983) (discussing Department's requirement that subpoenas of attorneys and members of news media be approved by the appropriate Department of Justice official).

**14.** In view of our disposition of this case, we do not address Doe's claim that a heightened fourth amendment standard applies when an individual claims a protectable privacy interest in records maintained by the government or some other third party.

**15.** Even if a witness is guilty of criminal contempt for failing to comply with a subpoena, however, a court may not use its civil contempt power to compel compliance until it has made its own determination that the subpoena meets the appropriate reasonableness standard. *See Schofield I*, 486 F.2d at 88–89; *see also Brown v.*

ing to challenge a subpoena may make a motion to quash before the district court. The court must quash or modify a subpoena if "compliance would be unreasonable or oppressive." Fed.R.Crim.P. 17(c). *See generally United States v. Calandra,* 414 U.S. 338, 346 n. 4, 94 S.Ct. 613, 619 n. 4, 38 L.Ed.2d 561 (1974).

b. *Is a grand jury subpoena an "order of a court"?*

Standing alone, the Privacy Act's "order of a court" language is susceptible to conflicting constructions.[16] On the one hand, since the subpoena is signed by the clerk of the court, is issued in the name of the court, and carries with it the contempt power, it is plausible to argue that it qualifies as an "order of a court." On the other hand, the term "order of a court" does carry with it a connotation of more than *pro forma* court involvement. Thus, to decide whether a grand jury subpoena comes within the statutory provision we must look to other sources for guidance. While the legislative history of the provision turns out to be ambiguous as well, two other factors that we will address point to the conclusion that Congress did not intend to allow disclosure pursuant to a subpoena—grand jury or otherwise—unless a court has actually approved its issuance.

i. *Legislative history.* We agree with the Eighth Circuit's determination that the legislative history of the "order of the court" provision is not particularly helpful in determining whether Congress perceived a difference between the terms "court order" and "legal process." *See Bruce v. United States,* 621 F.2d 914, 916 (8th Cir. 1980) ("There is nothing in the legislative

history of the Privacy Act of 1974 to suggest what Congress intended by the term."). The original bill that passed the Senate provided that "each federal agency covered by this Act which maintains an information system or file shall make reasonable efforts to serve advance notice on any individual before any personal information on such individual is made available to any person *under compulsory legal process.*" H.R. 16373, 93d Cong., 2d Sess., § 201(g), *reprinted in* Senate Committee on Government Operations, United States Senate & Committee on Government Operations, House of Representatives, *Legislative History of the Privacy Act of 1974,* S. 3418 (Public Law No. 93–579) 137 (1976) [hereinafter *Legislative History*] (emphasis added). The Senate Report explained that "[t]he purpose of the section is to permit an individual advance notice so that he may take appropriate legal steps to suppress a subpoena for his personal data." S.Rep. No. 1183, 93d Cong., 2d Sess. 66 (1974), *reprinted in Legislative History* at 66. The House bill, on the other hand, made no provision for notice but did contain an amendment providing for disclosure "pursuant to the order of a court of competent jurisdiction." Congressman Butler had introduced this amendment "for the purpose of making it perfectly clear that a lawful order of a court of competent jurisdiction would be an appropriate condition of disclosure." 120 Cong.Rec. 36,959 (1974), *reprinted in Legislative History* at 936. As part of the last-minute compromise that settled the differences between the House and Senate versions, the Senate agreed to adopt the House approach, which did not require notice to the individual but did use

*United States,* 359 U.S. 41, 49–50, 79 S.Ct. 539, 545–46, 3 L.Ed.2d 609 (1959) (it is the court which must order a witness to answer); *Wong Gim Ying v. United States,* 231 F.2d 776 (D.C.Cir. 1956) (judge must order the witness to testify before finding her in contempt).

**16.** The difficulty in resolving this issue by looking at the language alone, is evidenced by the differing opinions that courts have reached on whether a grand jury subpoena qualifies as a "court order" under the Fair Credit Reporting Act. 15 U.S.C. § 1681(b). *Compare In re Grand*

*Jury Subpoena Duces Tecum Concerning Credit Bureau, Inc.,* 498 F.Supp. 1174 (N.D.Ga.1980) (not "court order"); *In re Application of Credit Information Corporation of New York to Quash Grand Jury Subpoena,* 526 F.Supp. 1253 (D.Md. 1981) (not "court order") *with In re Grand Jury Proceedings,* 503 F.Supp. 9 (D.N.J.1980) (is a "court order"); *In re Subpoena Duces Tecum to Testify Before Grand Jury Directed to TRW, Inc.,* 460 F.Supp. 1007 (E.D.Mich.1978) (is a "court order").

the "court order" language in place of the "process" terminology.

Unfortunately, this legislative history is subject to conflicting interpretations. It is quite possible that the Senate would not have agreed to the no-notice provision if the compromise had permitted disclosure pursuant to process alone. Alternatively, it is conceivable that Congress considered the terms synonymous, and that the Senate was simply abandoning the notice provision, while allowing for disclosure pursuant to process. The history of the Privacy Act, therefore, does not answer the question of whether Congress understood the terms as having different meanings.[17]

ii. *Provisions in similar statutes.* Our review of the plain language and legislative history of the Privacy Act has been inconclusive as to whether Congress intended to allow disclosure of records pursuant to a grand jury subpoena. Under these circumstances, it is appropriate to consider whether the use of the same language in another statute aids in a determination of its scope in this one. We presume that when enacting new legislation, Congress is aware of similar language in old statutes, and chooses to repeat that language based on an understanding of relevant law interpreting it. *See Stribling v. United States,* 419 F.2d 1350, 1352–53 (8th Cir.1969) ("Where the interpretation of a particular statute at issue is in doubt, the express language and legislative construction of another statute not strictly *in pari materia* but employing similar language and applying to similar persons, things, or cognate relationships may control by force of analogy."); *accord Yuen v. Internal Revenue Service,* 649 F.2d 163, 167 n. 4 (2d Cir.), *cert. denied,* 454 U.S. 1053, 102 S.Ct. 597, 70 L.Ed.2d 588 (1981); *see also Overstreet v. North Shore Corp.,* 318 U.S. 125, 131–32, 63 S.Ct. 494,

498–99, 87 L.Ed. 656 (1943) (applying same scope to language used in statutes which although not strictly analogous, were similar).

The "order of a court" language of the Privacy Act is virtually identical to a provision in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. The FCRA is quite similar to the Privacy Act inasmuch as it too limits disclosure of certain information which an individual expects to be kept confidential. Section 1681b(1) of the FCRA provides for disclosure "[i]n response to the order of a court having jurisdiction to issue such order."

The legislative history of the FCRA reveals that Congress consciously decided to use the "order" language and not "process." *See In re Gren,* 633 F.2d 825, 826–28 (9th Cir.1980). The original Senate bill provided that "[a] consumer reporting agency may furnish a consumer report under the following circumstances and no others: (1) In response to the order of a court having jurisdiction to issue such order ..." S. 823, 91st Cong., 2d Sess. § 604 (1970). The bill which ultimately became the House bill, on the other hand, prohibited disclosure of material unless "pursuant to legal process." H.R. 1634, 91st Cong., 2d Sess. § 35 (1970). The legislative history demonstrates that Congress was very sensitive to the issue of how broad the government's access to credit information should be. *See In re Gren,* 633 F.2d at 827. Against this background, the House eventually ceded to the Senate and passed the Senate language verbatim. 15 U.S.C. § 1681(b). In light of this history, we agree with the Ninth Circuit that "this very issue was before the Congress" and that Congress clearly wanted to exclude process of a court that was

---

**17.** Because it was late in the session, the Senate and House did not resolve their differences in a Conference Committee. Rather, Senators Ervin and Percy, and Congressmen Moorhead and Erlenborn met and hammered out a compromise version of the bill. While there is no Conference Committee Report, the staffs of the four legislators did prepare a memorandum entitled, "Analysis of House and Senate Compromise Amendments to the Federal Privacy Act." 120 Cong. Rec. 40,880 (Dec. 18, 1974), *reprinted in Legislative History* at 858. *See generally* II J. O'Reilly, *Federal Information Disclosure* 20-9- 20-14 (1985) (discussing enactment of Privacy Act). That memorandum is silent on the choice of language at issue here.

not a court order. *See In re Gren,* 633 F.2d at 827.[18]

In light of the ambiguity surrounding the "order" language as used in the Privacy Act, its usage in the FCRA is important. Incorporation of identical or similar language from an act with a related purpose evidences some intention to use it in a similar vein.[19] *See Stribling,* 419 F.2d at 1352–53. Moreover, the policy considerations that prompted Congress to limit disclosure in the FCRA, were also present in the Privacy Act. Finally, the history of the FCRA demonstrates that when it was passed, Congress understood that the terms "process" and "order" were different. Although certainly not dispositive, the meaning attributed to the term by Congress in the FCRA, is probative of the meaning that should be afforded the like term here.

The notion that Congress consciously chose to employ the "order" language from the FCRA is buttressed by the fact that Congress had another option to choose from. The Veterans' Records Statute in its original pre-1976 form provides for disclosure "when required by process of a United States court to be produced in any suit or proceeding therein pending." 38 U.S.C. § 3301(b)(2). Congress' decision not to use

that language, and to adopt a seemingly stricter provision, must be afforded weight. If Congress intended to allow disclosure pursuant to any request issued in the name of a court, then it would more likely have chosen the process terminology used in § 3301. Thus, we agree with the Ninth Circuit that no matter "[w]hat other attributes we may ascribe to Congress, this court can hardly hold that Congress did not know, when it enacted this law, that grand jury subpoenas were not the equivalent of a court order." *In re Gren,* 633 F.2d at 827.

iii. *The purpose and the structure of the Act.* When the language of a specific provision, taken together with its history and other aids of construction, do not provide unequivocal answers to the question of congressional intent, a court may look to the overall structure and purpose of the statute to determine which of the possible readings seems to fit in best with the goal that Congress had in mind. *See Commissioner of Internal Revenue v. Engle,* 464 U.S. 206, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984) (court's " 'duty is to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested' ") (quoting *NLRB v. Lion Oil*

---

**18.** The question of whether grand jury subpoenas come into the FCRA exception has divided many district courts. *See supra* note 16. Virtually all of those that have held that a grand jury subpoena is an "order" under FCRA, have done so without considering the legislative history set out in *Gren.*

The court in *Gren* also examined the relevance of the Ninth Circuit's opinion in *United States v. Kostoff,* 585 F.2d 378 (9th Cir.1978), the only other appellate court to address the "court order" language. In *Kostoff,* the court, without explaining the context of its assertion, stated that "[d]efendant's argument that a grand jury subpoena is not a 'court order' is specious." *Id.* at 380. The Court in *Gren* held that:

The government's reliance on *United States v. Kostoff, et al.,* 585 F.2d 378 (9th Cir.1978), is ill placed. That case contains no analysis of the issues involved here. It deals with criminal charges of mail fraud and bank credit fraud. The credit profiles involved in *Kostoff* were the subject of the criminal acts charged; i.e., the "doctoring" of credit files, thus no issue of consumer privacy or protec-

tion was involved. The court's language at 585 F.2d, at 380, to the effect that the defendant's argument that a grand jury subpoena is not a court order 'is specious' should be limited to the context of the Kostoff case.
*Gren,* 633 F.2d at 829 n. 5.

**19.** On the basis of analogy the interpretation of a doubtful statute may be influenced by language of other statutes which are not specifically related, but which apply to similar persons, things, or relationships. By referring to other similar legislation, a court is able to learn the purpose and course of legislation in general, and by transposing the clear intent expressed in one of several statutes to a similar statute of doubtful meaning, the court not only is able to give effect to the probable intent of the legislature, but also to establish a more uniform and harmonious system of law. It is useful to look to the function of statutes having similar language to determine if there is a possibility of reference.
2A N. Singer, *Sutherland Statutory Construction* § 53.03, at 554 (Sands 4th ed. 1984).

*Co.*, 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957) (Frankfurter, J., concurring in part and dissenting in part)). In this case, a fair reading of the statute and its purpose leads to the definite conclusion that Congress did not intend to allow disclosure pursuant to a typical grand jury subpoena.

One of the stated purposes of the Privacy Act was to "prevent the kind of illegal, unwise, overbroad, investigation and record surveillance of law abiding citizens produced in recent years from actions of some overzealous investigators, and the curiosity of some government administrators, or the wrongful disclosure and use, in some cases, of personal files held by Federal agencies." S.Rep. No. 1183, 93d Cong., 2d Sess. 1 (1974), *reprinted in Legislative History* at 154. At the same time Congress recognized the need to allow for disclosure when "there is an important public policy need for such exemption." P.L. No. 93–579, § 2(b)(5) (1974), *reprinted in Legislative History* at 501.

The specific exemptions that Congress established reflect a delicate balance between limiting disclosure of records, and not unduly hampering government operations. "The key operating concept of the Privacy Act is that individual rights must be recognized and balanced in agency uses of information." II J. O'Reilly, *Federal Information Disclosure* 20–22 (1985). For example, although the Act permits disclosure to another governmental agency for civil or criminal law enforcement activity, it conditions the disclosure on the written request of the head of the agency, thereby assuring some high level evaluation of the need for the information. *See* 5 U.S.C. § 522a(b)(7). Similarly, while an agency may disclose information pursuant to a "routine use," the Act requires that such routine uses be "compatible with the purposes for which [the information] is collected," 5 U.S.C. § 552a(a)(7), and that the public be afforded an opportunity to comment on whether a routine use should be established. 5 U.S.C. § 552a(e)(4)(D). The memorandum describing the compromise bill states that this provision was "intended to discourage the unnecessary exchange of information to other persons or to agencies who may not be as sensitive to the collecting agency's reasons for using and interpreting the material." 120 Cong.Rec. 40,-881 (introduced by Congressman Moorhead), *reprinted in Legislative History* at 859–60.

To read the "order of the court" language as permitting disclosure pursuant to a subpoena, would create a gaping hole in the overall scheme of the Privacy Act. Grand jury subpoenas are not necessarily subject to any upper-level evaluation whatsoever. *See supra* at 79–81. They are typically issued by the AUSA working on the case, without prior approval by the head of the agency, the grand jury, or any judge. One of Congress' explicit goals in enacting the Privacy Act was to preclude overzealous investigators from running roughshod over an individual's privacy, and the grand jury subpoena simply does not safeguard against that danger. As one district court explained in the context of the FCRA: "Since a grand jury is primarily a tool of the prosecutor and is issued pro forma by the clerk of the district court, there is no guarantee that a subpoena is based upon a careful consideration of the competing interests of the prosecutor's need for the information and the [individual's] right to privacy." *In re Application of Credit Information Corp.*, 457 F.Supp. 969, 971–72 (S.D.N.Y.1978).

Moreover, the reading suggested by the government would severely diminish the utility of the head of the agency provision of subsection (b)(7). That provision deals exclusively with disclosure to law enforcement agencies, yet allows disclosure only pursuant to a *written request* by the *head* of the agency. In light of this provision, it is unlikely that Congress intended to allow federal prosecutors to avoid this requirement simply by using a subpoena.

Indeed, the weakness of the government's suggested reading is highlighted by the fact that it would require us to allow disclosure pursuant to any subpoena—

whether it issues from the prosecutor, a criminal defendant, or civil litigant. In all of these cases, the subpoena is issued in the name of the court, and carries with it the threat of contempt to those who ignore it. *See* Fed.R.Crim.P. 17; Fed.R.Civ.P. 45. Yet it is inconceivable that Congress intended to allow disclosure pursuant to every private litigant's whims.[20]

During oral argument, the government advanced a novel argument construing the "order of the court" language as including only subpoenas for records to be provided to the grand jury. When the grand jury is involved, it argued, Federal Rule of Criminal Procedure 6(e)'s secrecy provision is an ample protection of confidentiality. We reject this argument because it has no basis in the statute, or the legislative history. There is no principled way to assert that the term "order of the court" includes grand jury subpoenas but excludes other types of subpoenas that are also issued in the name of a court.

We conclude, therefore, that subpoenas—grand jury or otherwise—do not qualify as "order[s] of a court of competent jurisdiction" under 5 U.S.C. § 552a(b)(11), unless they are specifically approved by a court. *See Stiles v. Atlantic Gas Co.*, 453 F.Supp. 798 (N.D.Ga.1978). We now turn to the question of whether the disclosure in this case was permitted under some other provision of the Privacy Act.

### 2. *Required By Another Agency*

■ The district court also held that the disclosure in this case was authorized under the provision of the Veterans' Records Statute permitting disclosure "[w]hen required by any department or other agency of the United States Government." 38 U.S.C. § 3301(b)(3). Here again, the court applied the wrong provision. The relevant Privacy Act provision permits disclosure

"to another agency ... for a civil or criminal law enforcement activity if the activity is authorized by law, and *if the head of the agency or instrumentality has made a written request* to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought." 5 U.S.C. § 552a(b)(7) (emphasis added). The Senate Committee that inserted the amendment incorporating the Privacy Act into § 3301 recognized that this was one of the areas where the Privacy Act was stricter:

> [S]ection ... 3301(b)(3) ... authorizes the disclosure of information 'when required by any department or other agency of the United States Government.' Subsection (b)(7) of the Privacy Act also authorizes disclosure of information to another Federal agency, but imposes three additional requirements on the disclosure—it must be for a 'civil or criminal law enforcement activity,' the activity must be 'authorized by law,' and the head of the agency seeking disclosure must make a written request specifying the particular portion of the information desired and the law enforcement activity for which it is sought. In this instance, the Privacy Act clearly imposes more restrictions on the release of information than section 3301 of title 38.... Thus, ... the stricter provisions of the Privacy Act would apply, and the VA could release information to another Federal agency only when the three additional requirements ... were satisfied.

S.Rep. No. 892, 94th Cong., 2d Sess. 11 (1976) *reprinted in* U.S. Code Cong. & Ad.News 1299, 1308 (1976). As it must, the government concedes that there was no written request from the head of the agency in this case. Thus, it is obvious that the disclosure was not sanctioned by § 3301 as amended by subsection (j).[21]

---

**20.** This is not to say that a prosecutor, a defendant, or a civil litigant, cannot submit an *in camera ex parte* application for a court order. *See In re Gren,* 633 F.2d 825, 828 n. 3 (9th Cir.1980) (discussing procedure under which court orders can be obtained); *In re Grand Jury Subpoena Duces Tecum Concerning Credit Bu-*

*reau, Inc.,* 498 F.Supp. 1174, 1177 (N.D.Ga.1980) (application for court order furthers purpose behind FCRA).

**21.** The Eighth Circuit's decision in *Word v. United States,* 604 F.2d 1127 (8th Cir.1979), is not to the contrary. There, the court held that while a

### 3. Routine Uses

The Privacy Act permits disclosure of information "for a routine use," 5 U.S.C. § 552a(b)(3), which it defines as "the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). The Act requires that the agency publish in the Federal Register, at least annually, a notice of the existence and character of "each routine use of the records contained in the system, including the categories of users and the purpose of such use." 5 U.S.C. § 552a(e)(4)(D). At least 30 days prior to the publication of a routine use, the agency must publish "a notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency." 5 U.S.C. § 552a(e)(11).

### a. Routine Use 22

■ The government urges that the disclosure here was in conformance with Veterans' Administration Routine Use 22. That provision states that:

> In the event that a system of records maintained by this agency to carry out its functions indicates a violation or potential violation of law, whether civil, criminal or regulatory in nature, ... the relevant records in the system of records may be referred, as a routine use, to the appropriate agency ... charged with the responsibility of investigating or prose-

cuting such violation or charged with enforcing or implementing the statute, or rule, regulation or order issued pursuant thereto.

43 Fed.Reg. 44,743 (1978). We reject the government's assertion that this routine use permits the disclosure here. It is clear from the language of the provision that this routine use deals with referral of records to law enforcement officials only when the records themselves indicate a violation of law. In this case, by contrast, the disclosure was in no way related to the VA's suspicion that the records indicated a violation of law.

### b. Routine Use 23

■ Subsequent to the VA's disclosure of Doe's records, the VA promulgated two new routine uses relating to disclosure pursuant to federal and state subpoenas. The routine use dealing with federal subpoenas provides that:

> Any information in this system may be disclosed to a federal grand jury, a Federal Court or a party in litigation or a Federal Agency or party to an administrative proceeding being conducted by a Federal Agency, in order for the VA to respond to and comply with the issuance of a federal subpoena.

47 Fed.Reg. 51,841 (1982) (proposed November 17, 1982).[22]

The promulgation of this new routine use is not relevant to our assessment of what the statute meant as of November 5, 1981,

---

government hospital violated 552a(b)(7) by disclosing records requested by telephone, violations of the Privacy Act do not give rise to an evidentiary exclusionary rule. *Id.* at 1129.

**22.** The Veterans' Administrator provided the following explanation accompanying the proposal:

> Questions have arisen regarding the authority under the Privacy Act of 1974 to permit disclosures ... to respond to subpoenas from a Federal, State or municipal court of a party in litigation or to respond to suboenas issued by Federal, State or municipal administrative agencies functioning in a quasi-judicial capacity. In the past, the VA has interpreted "subpoenas" to be within the meaning of subsection (b)(11) of the Privacy Act (5 U.S.C. 552a(b)(11)) which authorizes disclosures of patient medical records pursuant to an "order

of a court of competent jurisdiction." However, due to recent court decisions which have held to the contrary, the Department of Medicine and Surgery is establishing two new routine uses, numbers 23 and 24, which concern the release of information pursuant to a subpoena from a Federal, State or municipal grand jury; a Federal, State or municipal court or a party in litigation; a Federal agency or party to an administrative proceeding being conducted by a Federal agency; or to a State or municipal administrative agency functioning in a quasi-judicial capacity or a party to a proceeding being conducted by such agency, in order for the VA to respond to and comply with the issuance of the subpoena.

the day the VA disclosed Doe's records.[23] The new routine use is, however, very relevant to Doe's request for injunctive and declaratory relief against further disclosure of his records pursuant to a grand jury subpoena. If the district court determines that such equitable relief is appropriate,[24] it will have to consider the validity and scope of the new routine use. We fully expect that the parties would, at that point, be given a full opportunity to brief and argue this issue.

### 4. *Summary of Privacy Act Issues*

After reviewing all of the government's proffered exceptions to the Privacy Act's prohibition on nonconsenual disclosure of medical records, we conclude that none of the exceptions governed in this case. Thus, we reverse the district court's determination that there was no violation of the Veterans' Records Statute.

### B. *The Federal Tort Claims Act*

▇ The Federal Tort Claims Act ("FTCA") makes the United States government liable for damages "caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346. Unless the government action falls under one of the exceptions contained in 28 U.S.C.

§ 2680, the government is liable for "tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

Doe asserts that the disclosure of his confidential medical records gives rise to a tort action in the District of Columbia, the place where the disclosure took place. First, he claims that the disclosure violated the District of Columbia Mental Health Information Act of 1978, D.C. Code §§ 6–2001—6–2062. That Act provides that "[n]o mental health facility, data collector, or employee or agent of a mental health professional, mental health facility or data collector shall disclose or permit the disclosure of mental health information to any person, including an employer." D.C. Code § 6–2002(a). Negligent violators of the Act are liable in an amount equal to damages, plus the cost of the action and reasonable attorneys' fees. § 6–2061(a). Willful or intentional violators are liable in the same manner, except that liability for damages is not to be less than $1,000. § 6–2061(b).

Additionally, Doe asserts that disclosure of the records was a tortious invasion of privacy under District of Columbia law. Doe cites a number of cases for the proposition that the District of Columbia recognizes this tort, *Black v. Sheraton Corp. of America*, 564 F.2d 531 (D.C.Cir.1977); *Pearson v. Dodd*, 410 F.2d 701 (D.C.Cir.), *cert. denied*, 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969), and points to a very recent case holding that breach of the phy-

---

**23.** Doe argues that the fact that the VA promulgated a new routine use demonstrates that the disclosure was not permitted previously. The VA on the other hand, asserts that the new routine use was intended simply to make the existing law clearer. *See supra* note 22. Since we deem either alternative equally plausible, we do not consider the promulgation of a new routine use relevant to our determination of what the law meant prior to the new routine use.

It is important to note that even if a routine use applies, that only affects the Privacy Act. The Veterans' Records Statute might then be the "stricter" of the two statutes, and any disclosure would still have to conform with its provisions. *See supra* 78–79.

**24.** We express no opinion on whether such equitable relief should be afforded. *See supra* note 5. *See also Community for Creative Non-Violence v. Hess*, 745 F.2d 697, 700 (D.C.Cir. 1984) (beyond satisfying itself that the constitutional requirement of "case or controversy" is satisfied, court must examine whether the dispute " 'is so attenuated that considerations of prudence and comity ... counsel the court to stay its hand, and to withhold relief it has power to grant' ") (quoting *Chamber of Commerce v. United States Dep't of Energy*, 627 F.2d 289, 291 (D.C.Cir.1980)). We leave this determination to the district court which is better able to evaluate the factual matters central to a determination of just how "attenuated" the dispute currently is.

sician-patient privilege is an actionable tort in the District of Columbia. *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580 (D.C.1985).

The district court dismissed Doe's FTCA action, holding that since the disclosure was sanctioned by the Veterans' Records Statute, 38 U.S.C. § 3301, no tort cause of action was available. J.A. at 102–03 (citing *Flowers v. United States*, 230 F.Supp. 747, 750 (W.D.Okla.1964), *aff'd*, 348 F.2d 910 (10th Cir.1965), *cert. denied*, 382 U.S. 994, 86 S.Ct. 578, 15 L.Ed.2d 481 (1966). Alternatively, the court held that since the invasion of privacy was reasonable,. it did not give rise to a cause of action under the law of the District of Columbia. J.A. at 103 (citing *Grabou v. May Department Stores Co.*, 462 A.2d 1102, 1104 (D.C.1983); *Jackson v. District of Columbia*, 412 A.2d 948, 954 (D.C.1980)). Finally, the court held that the District of Columbia Mental Health Information Act of 1978 did not create a cause of action because it is, by its own terms, inapplicable when in conflict with any federal law. J.A. at 109 (citing *District of Columbia Institute of Mental Hygiene v. Medical Service of D.C.*, 474 A.2d 831, 833 (D.C.1984)).

All three of the district court's reasons for dismissing Doe's FTCA claim were premised on its holding that the disclosure in this case was permissible under the Veterans' Records Statute.[25] In view of our conclusion that the district court erred in holding that the Veterans' Records Statute permitted the disclosure, we remand the issue of FTCA liability to it for reconsideration.[26]

## C. *The D.C. Mental Health Information Act*

■ As an element of both his FTCA action and his request for equitable relief, Doe claimed that the VA's disclosure of his psychiatric records violated the District of Columbia Mental Health Information Act of 1978, D.C. Code §§ 6–2001—6–2062. Section 6–2002(a) of the Act provides that:

No mental health professional, mental health facility, data collector, or employee or agent of a mental health professional, mental health facility or data collector shall disclose or permit the disclosure of mental health information to any person, including an employer.

The Act defines a "data collector" as any person (including a government agency or part thereof) who regularly engages in the practice of assembling or evaluating client mental health information, D.C. Code § 6–2001(4), and creates both civil, § 6–2061, and criminal, § 6–2062, liability for certain types of violations. Section 6–2075 of the act provides, however, that "[n]othing in this chapter shall be construed to necessarily require or excuse noncompliance with any provision of any federal law."

The district court never determined whether the VA's disclosure of Doe's records came within the terms of this statute. Instead, it held that "inasmuch as this section can be read to be inconsistent with the federal statutes and regulations permitting disclosure, the local law must yield to the federal law and regulations." J.A. at 109. The law that the district court saw as conflicting was, of course, the provisions of

---

**25.** The court's determination that the VA's action was pursuant to statute, and that the District of Columbia Mental Health Act is inapplicable, were, of course, directly based on its reading of the Veterans' Records Statute. Although the determination that the government action was reasonable under District of Columbia law was not as directly linked to the reading of § 3301, we are unprepared to say that the presence or absence of a controlling statute has no effect on whether an intrusion is reasonable.

**26.** We in no way intimate that there is, indeed, liability under the FTCA. Many open questions remain. Indeed, our opinion itself creates an

additional one: the effect of the FTCA provision that forecloses "[a]ny claim based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, *whether or not such statute or regulation be valid.*" 28 U.S.C. § 2680(a) (emphasis added). The VA regulations seem, on their faces, to authorize the disclosure of Doe's records. *See supra* note 8. Thus, the district court should consider whether, notwithstanding our holding that the VA regulations permitting disclosure were contrary to the statute, Doe's FTCA claim still fails.

the Veterans' Records Statute that it held allowed disclosure here. In light of our determination that the Veterans' Records Statute did not allow this disclosure, we remand to the district court the question of whether the Mental Health Information Act prohibited the disclosure in this case, and what, if any, effect its violation has on Doe's various requests for relief.

### D. Doe's Constitutional Claims

■ In addition to his statutory claims, Doe asked the district court for equitable relief under the fourth amendment, and under the constitutional right to privacy recognized by the Supreme Court in *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Because it decided that the statutes did not prohibit the disclosure of Doe's records, the district court was compelled to address Doe's constitutional arguments, both of which it dismissed.

In view of our determination that the Veterans' Records Statute did not permit the disclosure, it is quite possible that all of the relief that Doe should be afforded can be fashioned on statutory grounds. The availability of full relief on the basis of the statutes might turn, however, on two issues that were neither briefed nor argued before this court: First, do the statutes authorize a remedial court order requiring (a) return of the records to Doe, (b) exclusion of the information from the grand jury, and (c) no further disclosure by the U.S. Attorney or his staff? Second, does the promulgation of the new routine use preclude prospective relief under the statute since, if it is valid, the VA may now disclose veterans' records pursuant to grand jury subpoenas?

"It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *accord Youakim v. Miller*, 425 U.S. 231, 234, 96 S.Ct. 1399, 1401, 47 L.Ed.2d 701 (1976); *California v. Taylor*, 353 U.S. 553, 557 n. 2, 77 S.Ct. 1037, 1040 n. 2, 1 L.Ed.2d 1034 (1957). While the issue of what questions

may or may not be taken up is "one left primarily to the court of appeals, to be exercised on the facts of individual cases," courts have properly been reluctant to address an issue where the opposing party has not had a fair and adequate opportunity to dispute the material issues. *See Singleton*, 428 U.S. at 120, 96 S.Ct. at 2877; *Proctor v. State Farm Mutual Auto. Insurance Co.*, 675 F.2d 308, 326 (D.C.Cir.) (deciding question where parties made the issue "a major part of their presentation both to the District Court and to this court on appeal"), *cert. denied*, 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982); *American Federation of Government Employees, AFL–CIO v. Carmen*, 669 F.2d 815, 820 n. 25 (D.C.Cir.1981) (deciding issue where all parties had addressed it and its resolution was beyond doubt). When the issue has, through no fault of the parties, not been briefed or argued in any forum, the appropriate disposition is typically to remand the case to the district court. *See generally Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084–85 (D.C.Cir.1984); *British Airways Board v. Port Authority of New York*, 558 F.2d 75, 82 (2nd Cir.1977); *Doe v. McMillan*, 459 F.2d 1304, 1311 n. 10 (D.C.Cir.1972), *aff'd in part, rev'd in part*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Johnston v. Reily*, 160 F.2d 249, 250 (D.C.Cir.1947).

Upon remand, the district court should first determine whether Doe's claims can be satisfied on statutory grounds. If they can, then it need not, and should not, consider the constitutional arguments. *See Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974); *California Dep't of Human Resources v. Java*, 402 U.S. 121, 124, 91 S.Ct. 1347, 1350, 28 L.Ed.2d 666 (1971); *Dandridge v. Williams*, 397 U.S. 471, 475–76, 90 S.Ct. 1153, 1156–57, 25 L.Ed.2d 491 (1970); *Ashwander v. TVA*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). If, however, the court determines that the relief Doe has requested cannot be accomplished through the stat-

utes, it will have to address the constitutional issues. At that point, the district court should consider whether our holding today that the disclosure was not sanctioned by the Veterans' Records Statute affects the analysis that the district court used in its first consideration of the constitutional issues.[27]

### E. *Physician-Patient Privilege*

■ Doe also asked the district court to declare that the disclosure was a violation of the physician-patient privilege as codified at D.C. Code § 14–307. Subsection (a) of that statute provides that:

> In the Federal courts in the District of Columbia and District of Columbia courts a physician or surgeon or mental health professional as defined by the District of Columbia Mental Health Information Act of 1978 (D.C.Code, sec. 6–1611 [6–2001] et seq.) may not be permitted, without the consent of the person afflicted, or of his legal representative, to disclose any information, confidential in its nature, that he has acquired in attending a client in a professional capacity and that was necessary to enable him to act in that capacity, whether the information was obtained from the client or from his family or from the person or persons in charge of him.

27. We express no view on whether our decision that the disclosure was not sanctioned by the statute has an effect on Doe's claims under the fourth amendment, and under the constitutional right to privacy. It is possible that the district court's determination on this issue was infected by its conclusion that the statute allowed disclosure and, therefore, that the statute could not have contributed to Doe's justifiable expectation of privacy, or that the statutory analysis affected other parts of its constitutional analysis.

We are puzzled by the concurrence's charge that we have seen "fit to expound on sundry legal issues," and engaged in "abstract discussion of novel constitutional rights of dubious applicability." Conc. Op. at 92. To the contrary: Aside from our conclusions regarding the Veterans' Records Statute and the Privacy Act, *we* have repeatedly and explicitly declined to express ourselves on the merits of the various rights that Doe asserted in his complaint. Our mention of these other claims is focused solely on explaining why our decision on the main

The district court rejected Doe's claim under § 14–307, stating that the privilege is an evidentiary one which does not give rise to a cause of action. J.A. at 108. In support of this conclusion the district court cited *Logan v. District of Columbia,* 447 F.Supp. 1328, 1335 (D.D.C.1978). In *Logan,* the plaintiff brought a tort action alleging that he was injured by the Administrator of the District of Columbia Narcotics Treatment Administration's disclosure to the press that the plaintiff was an illicit drug user. As part of his *tort* claim, he alleged violation of § 14–307. The court rejected Logan's claim under the statute because "the plaintiff ha[d] not cited cases from this jurisdiction that have held that the privilege or the physician-patient relationship gives rise to a cause of action." *Id.* at 1335.

The fact that § 14–307 does not give rise to an action in tort[28] says nothing, however, about whether injunctive or declaratory relief is available to protect a patient against a physician's or mental health professional's avowed intention not to abide by the statute's terms. We do not hold that such relief is available, or even that the statute applies in this case. We do hold, however, that the district court clearly erred in dismissing the claim on the basis that it did. Given the fact that we are remanding the bulk of Doe's claims to the

statutory issue necessitates remand on these diverse claims as well. Ironically, the only allusion to their merits occurs in the *concurrence's* gratuitous characterization of them as "novel" and "dubious," and in *its* citation of a case finding no constitutional right to nondisclosure of private information. *Id.* at 92 & n. 2.

28. Much of the court's discussion in *Logan* focused on whether District of Columbia law recognized a common-law cause of action for breach of the confidentiality of the physician-patient privilege. The court's conclusion on this issue may no longer be accurate in view of the District of Columbia Court of Appeals' recent decision in *Vassiliades v. Garfinckel's, Brooks Bros.,* 492 A.2d 580, 591 (D.C.1985) (recognizing the tort of breach of physician-patient privilege). The *Vassiliades* decision, however, does not appear to directly affect the *Logan* court's analysis of § 14–307.

district court for determination, we remand this issue as well. Since no delay would be avoided by our determining the scope of the privilege today, we think that the interests of justice will best be served if this court avoids addressing aspects of the privilege which the district court has not yet passed upon. *See supra* p. 89.

### F. *Abuse of Process*

Finally, Doe asked the district court to declare that the AUSA's issuance of the grand jury subpoena was an abuse of process. The district court treated this claim as comprising two elements. First, Doe claimed that the AUSA abused the grand jury process by invading the confidential physician-patient relationship. Second, Doe argued that the AUSA abused the process by using a grand jury subpoena to explore the viability of a possible insanity defense that Doe had never asserted.

To the extent that the court considered the abuse of process claim to involve the issue of whether the subpoena invaded a zone of privacy created by the physician-patient privilege, it is indistinguishable from Doe's constitutional claims. *See supra* pp. 88–89. Whether or not the existence of a statutory or common-law privilege has any effect on an individual's justified expectations of privacy or confidentiality is an issue which the district court may address, if it deems it necessary to address the constitutional issues at all. *See supra* n. 27.

Doe also claimed that the AUSA abused the process of the grand jury when he used the subpoena not to investigate a crime, but to evaluate the viability of a yet to be asserted insanity defense. Had this, indeed, been the only reason behind the subpoena, this court would be troubled. The fact is, however, that the AUSA has never asserted that exploration of Doe's possible insanity defense was the only reason for the subpoena. Because the alternative reason that prompted him to issue the subpoena involved matters before the grand jury, AUSA Stanley submitted a sealed affidavit with the district court, and suggested that the court use its authority under Federal Rule of Criminal Procedure 6(e)(3)(C)(i) to permit disclosure of the affidavit's contents. The district court never ruled on this motion.

■ This court has had the opportunity to view the affidavit and believes that it is relevant to Doe's claim of abuse of process. Consequently, we remand to the district court[29] for a ruling on the government's motion that the contents of the affidavit be disclosed—at least to the plaintiff and his counsel.[30] The district court must, of course, exercise its discretion in deciding whether to disclose the contents of the affidavit. *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–23, 99 S.Ct. 1667, 1672–75, 60 L.Ed.2d 156 (1979); *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399–400, 79 S.Ct. 1237, 1240–41, 3 L.Ed.2d 1323 (1959).

### III. CONCLUSION

We have reviewed Doe's claims of error and have concluded that the district court

---

**29.** It would be ill-advised for us at this point to either explore the propriety of the government's actions based on just one of the two factors that it claims motivated it, or to express an opinion on the contents of an affidavit that one party has never seen.

**30.** We leave it to the district court to decide whether it has sufficient familiarity with this grand jury proceeding and related investigations, to pass judgment on the motion, or whether the request for disclosure should be transferred to the district court judge who supervised the grand jury proceeding. *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 225–31, 99 S.Ct. 1667, 1676–79, 60 L.Ed.2d 156 (1979) (discussing factors to be considered in determining which judge should make determination vis-a-vis the disclosure); *Socialist Workers' Party v. Grubisic,* 619 F.2d 641, 644 (7th Cir.1980) (suggesting that request for disclosure should be submitted to court that supervised grand jury's activities); *In re 1975–2 Grand Jury Investigation of Associated Milk Producers, Inc.,* 566 F.2d 1293, 1300–01 (5th Cir.), (approving of procedure wherein grand jury judge and judge presiding at proceeding where information is needed are both involved in decision), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978). The Court in *Douglas Oil Co.,* however, was careful not to impose any one procedure on the courts. 441 U.S. at 231, 99 S.Ct. at 1679.

erred in holding that the VA's disclosure of Doe's files was authorized by statute. Our reversal of the district court on that issue creates some new issues for the district court to consider, and places other issues it already passed on in a different light. We have, therefore, determined that the most prudent course for us to follow is to remand the bulk of Doe's claims to the district court for reconsideration in light of our statutory holding.

*Reversed and remanded.*

STARR, *Circuit Judge, concurring in the judgment.*

This case involves considerably less than meets the eye. It also stands as eloquent testimony to the imperfections and fallibility of the litigation process. Today we hold that the District Court fell into legal error when it failed to recognize the superseding effects of the 1976 amendment to the veterans disclosure provisions that incorporated the Privacy Act. Yet, in fairness to the District Court, neither Mr. Doe's counsel nor counsel for the Government had unearthed this important alteration to the governing statutory law during the sojourn of this case in the trial court; to the contrary, the parties litigated the case below without ever recognizing the applicability of the Privacy Act. Even on appeal, the parties continued to struggle mightily over issues of statutory construction that, unbeknown to them, were irrelevant to the case. It was only with the arrival of a very helpful *amicus* brief in this court that the light suddenly dawned, and the parties found themselves within an altogether different legal framework. Suffice it to say that the District Court may fully be excused for not doing the parties' legal research for them.[1]

As to the significance of the Privacy Act's application to the veterans disclosure statute, I concur heartily in the court's judgment that a grand jury subpoena *simpliciter* does not satisfy the more rigorous requirements that Congress chose to impose on the disclosure process by means of the Privacy Act. I reach this conclusion, however, without repairing to the welter of decisional law arising under the Fair Credit Reporting Act. On that question, I would wait for another day. Our determination that this particular disclosure ran afoul of the Privacy Act's strictures does indeed warrant a remand to the District Court for further consideration in light of the substantially altered legal landscape.

That being said, I would say no more. The court, however, sees fit to expound on sundry legal issues despite its recognition that on remand the plaintiff may very well be entitled to no relief at all. *See, e.g.,* Maj.Op. at 86–87 & n. 24, 88 n. 26. In particular, I find this setting singularly inappropriate for an abstract discussion of novel constitutional rights of dubious applicability.[2]

---

1. The District Court may, however, have made the case more difficult than it need have been by refusing to rule on the Government's request that the highly relevant materials contained in the sealed affidavit be disclosed. *See* Maj. Op. at 91.

2. *See* Maj. Op. at 90 (recognizing well-established principle that a court should not consider constitutional arguments unless it has already determined that case cannot be decided on non-constitutional grounds); *cf. J.P. v. DeSanti,* 653 F.2d 1080, 1090 (6th Cir.1981) (holding that "the Constitution does not encompass a general right to nondisclosure of private information"). *But see* Maj. Op. at 80 n. 14 (noting in abstract the possibility that "some heightened fourth amendment standard" may apply under certain ill-defined circumstances); *id.* at 89–90 & n. 27 (discussing possible applicability of the fourth amendment and the "constitutional right to privacy").