Bradley Arnold ASH, Plaintiff-Appellant,

v.

UNITED STATES of America et al., Defendants-Appellees.

No. 79–1433
Summary Calendar*.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1979.

As Amended Jan. 21, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

# 179

Roger J. McDonald, Orlando, Fla., for plaintiff-appellant.

Kendall W. Wherry, Asst. U. S. Atty., Orlando, Fla., Douglas N. Letter, Appellate Staff, Civ. Div. U. S. Dept. of Justice, Washington, D. C., for defendants-appellees.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

GEE, Circuit Judge:

Appellant Ash, punished by the Navy for possession of marijuana in an open nonjudicial proceeding, brought this suit for damages grounded in the Privacy Act, 5 U.S.C. § 552a. In it he contends that his privacy was infringed when, over his objections, his name, offense and punishment were published in the daily bulletin of his command. The court below granted summary judgment for the United States, concluding that the disclosure was proper under the "need to know" exception, 5 U.S.C. § 552a(b)(1), and, alternatively, that since the proceedings themselves were open to personnel of the command, publication of their results to the same command was not a "disclosure" under the Act. We affirm.

■ We agree with the district court that the "disclosure" to personnel of a command of the results of proceedings that were open to them—and in that sense public—is not such a disclosure as the Act forbids. *Cf. Cox Broadcasting Corp. v. Cohen*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (no invasion of privacy where further publicity gave facts already public).

■ More fundamentally, we think that the publication of the matter complained of was a "routine use" of it, as that term is defined in the Privacy Act:

(7) the term "routine use" means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected.[1]

To know, then, whether reporting the recorded outcome of such nonjudicial, punitive proceedings as Ash's is a use of it for a purpose "compatible with the purpose for which it was collected," we must consider that purpose.

Such summary proceedings, called in the Navy a Captain's Mast, have a history in our armed forces dating back to the American Revolution. Traditionally, the Captain's Mast was held near the ship's mainmast, before the assembled crew, where general announcements, summary punishments, and awards were given. This ancient proceeding is presently conducted under the general authority of Article 15, Uniform Code of Military Justice,[2] dealing with minor offenses and infractions of discipline. Traditionally, it has been open to the crew (command). Subsumed in its general purpose of maintaining discipline are numerous subsidiary ones: handling minor disciplinary problems promptly and effectively, eliminating the stigma attaching to criminal convictions by courts-martial, and demonstrating the fairness of the proceedings so that justice may be both done and seen to be done.[3] All of these purposes are plainly rational and germane to the maintenance of discipline. We conclude that publicizing the record of Captain's Mast results within the command is a purpose compatible with conducting and recording them.

1. 5 *U.S.C.* § 552a(a)(7).

2. 10 U.S.C. § 815.

3. *See, e. g.*, S.Rep.No.1911, 87th Cong., 2d Sess. (1962), *reprinted in* [1962] U.S.Code Cong. & Admin.News, pp. 2379–2392; The Marine Corps Equal Opportunity Manual, MCO P5354.1, subp. 3005.4 (Nov. 8, 1976).

Our conclusion is reinforced when we examine the legislative history of the Privacy Act. This reflects congressional concern that records assembled and (often) committed to a computer for one purpose may be used for other purposes, perhaps ones entirely foreign to the original.[4] The shade of Big Brother was called up from *1984*'s limbo. For example, Senator Percy, one of the Act's cosponsors, commented:

In and of itself, any of these personal files is not particularly ominous. Most people readily accept the fact that data gathering systems are necessary to our institutions if they are to keep pace with the complex needs of a modern society. Without records there would be chaos. The real problem, comes, however, when these information systems are linked with one another and are used to exchange information without the knowledge or consent of the individuals concerned. When personal data collected by one organization for a stated purpose is used and traded by another organization for a completely unrelated purpose, individual rights could be seriously threatened.

120 Cong.Rec. 36893–4 (1974).

Nothing of that sort has happened here. Instead, one and the same organization—a Navy command—has disseminated among its members the record of an administrative punishment, one inflicted in lieu of a more stigmatizing criminal one, for the purpose of showing that infractions of its governing laws will be swiftly and condignly punished. The judgment below is

AFFIRMED.

Appellees, in a "Motion to Modify Opinion," chivalrously disavow "routine use" as a basis for judgment in their favor on grounds that they disavowed it as a contention in response to a request for admission below. Though remaining convinced of the correctness of our discussion of this point, we accede to their request and withdraw that portion of the opinion. Since this was an alternative ground of our decision, the result is not changed. It is so ORDERED.

4. *See* the Congressional Findings and Statement of Purposes in Pub.L. 93–579, § 2, 88 Stat. 1896 (1974).