UNITED STATES of America and J. Kenneth Mansfield, Inspector General of the Department of Energy, Appellants,

v.

John IANNONE, American Petroleum Institute.

No. 78–1779.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 28, 1979.

Decided Aug. 31, 1979.

Rehearing denied Dec. 19, 1979.

Lynn R. Coleman, Gen. Counsel, Dept. of Energy, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Dept. of Justice, Earl J. Silbert, U. S. Atty., Robert E. Kopp, Neil H. Koslowe, Attys., Dept. of Justice and Henry A. Gill, Jr., Atty., Dept. of Energy, Washington, D. C., were on the brief for appellants.

Kenneth A. Lazarus, Washington, D. C., with whom James J. Bierbower, Washington, D. C., were on the brief for appellee.

Daniel Joseph and Harry R. Silver, Washington, D. C., were on the brief for Amicus Curiae urging affirmance.

John A. Terry and William H. Briggs, Jr., Asst. U. S. Attys., Washington, D. C., entered appearances for appellants.

Before MacKINNON, ROBB and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

The United States and J. Kenneth Mansfield, Inspector General of the Department of Energy (DOE), seek reversal of a District Court order denying enforcement of a subpoena *ad testificandum* issued by the In-

spector General. The subpoena was issued in the course of an investigation of alleged unauthorized disclosure of information by Department of Energy officials. It was directed to John Iannone, an employee of the American Petroleum Institute (API). When Iannone failed to comply with the subpoena the government filed its petition for enforcement in the District Court. The District Court declined to enforce the subpoena. We affirm the order denying enforcement.

I.

This case grew out of an investigation caused by news reports in the spring of 1978 that employees of DOE had "leaked" information to the American Petroleum Institute and Iannone. The news items were based upon Iannone's own report to his supervisors at API, which had indicated that he had received information and material from agency personnel, including drafts of DOE policy statements, drafts of congressional communications, and drafts of rules and regulations, prior to their promulgation or release to the public. The Iannone report also suggested that Iannone had influenced DOE action on several matters. Investigations into the alleged "leaks" followed. The Senate Committee on Energy and Natural Resources held hearings on the matter, and the Inspector General of DOE began an investigation.

In the course of his investigation the Inspector General issued three subpoenas *ad testificandum* to Iannone. Citing other commitments Iannone failed to comply with any of them. The Inspector General and DOE then began this action in the District Court to enforce the third subpoena which was issued and served July 6, 1978 and required Iannone to appear and testify on July 12, 1978. In opposing the petition for enforcement Iannone challenged the Inspector General's authority, either in his own capacity or in the exercise of authority delegated by the Secretary of Energy, to compel the appearance of a witness to give testimony.

The District Court held that there was no statutory authority "for the compulsion of oral testimony under oath in connection with the investigation of alleged misconduct on the part of an agency employee." *United States v. Iannone*, 458 F.Supp. 41 at 42 (D.D.C. 1978). On appeal the government contends that the Inspector General's authority to compel Iannone's appearance to give testimony derives from either of two sources in the Department of Energy Organization Act: (1) the Inspector General's special subpoena power conferred by 42 U.S.C. § 7138(g)(2); and (2) delegation by the Secretary of Energy to the Inspector General, as the Secretary's agent, of the Secretary's general subpoena power under 42 U.S.C. § 7255. We agree with the District Court that the subpoena served on Iannone cannot be sustained on either basis advanced by the government.

II.

The 1977 Department of Energy Organization Act (the Act) creates within the Department the Office of Inspector General, to be headed by an Inspector General appointed by the President by and with the advice and consent of the Senate. The statute provides that the appointment shall be "solely on the basis of integrity and demonstrated ability and without regard to political affiliation. The Inspector General shall report to, and be under the general supervision of, the Secretary or, to the extent such authority is delegated, the Deputy Secretary, but shall not be under the control of, or subject to supervision by, any other officer of that Department." 42 U.S.C. § 7138(a)(1) (Supp. I 1977). The Inspector General's function, in part, is to "investigate activities relating to the promotion of economy and efficiency in the administration of, or the prevention or detection of fraud or abuse in, programs and operations of the Department." 42 U.S.C. § 7138(b)(1). He is charged with broad responsibility to oversee and maintain the agency's integrity and efficiency, and to keep the Secretary of Energy and Congress informed concerning those matters. 42 U.S.C. § 7138(a)–(g). The legislative history of the Act reflects

the theme that the Inspector General, although subject to general supervision by the Secretary, is intended to act independently in fulfilling his duties. H.R.Rep.No. 95–539, 95th Cong., 1st Sess. 63 (Joint Explanatory Statement of the Committee of Conference), *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 854, 934.

Section 208(g)(2) of the Act, 42 U.S.C. § 7138(g)(2) authorizes the Inspector General:

> [T]o require by subpena (sic) the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence necessary in the performance of the functions assigned by this section  . . . .

The Secretary's subpoena power is granted by section 645, 42 U.S.C. § 7255:

> For the purpose of carrying out the provisions of this chapter, the Secretary, or his duly authorized agent or agents, shall have the same powers and authorities as the Federal Trade Commission under section 49 of Title 15 with respect to all functions vested in, or transferred or delegated to, the Secretary or such agents by this chapter.

Section 642 of the Act, 42 U.S.C. § 7252 states:

> Except as otherwise expressly prohibited by law, and except as otherwise provided in this chapter, the Secretary may delegate any of his functions to such officers and employees of the Department as he may designate, and may authorize such successive redelegations of such functions within the Department as he may deem to be necessary or appropriate.

On June 16, 1978 the Secretary, purporting to act pursuant to 42 U.S.C. § 7252, delegated to the Inspector General

> . . . all functions vested in me by law as the Secretary of Energy ("Secretary") relating to the issuance of subpoenas (as defined in Section 9 of the Federal Trade Commission Act, 15 U.S.C. 49) with respect to the following matters:
>
> The alleged unauthorized disclosures of Department of Energy information to the American Petroleum Institute and

John Iannone matters incidential (sic) thereto.

(J.A. 31)

The government in its brief on this appeal states that it "relies chiefly on the subpoena power which is delegated by the Secretary", and the government's brief does not discuss the authority of the Inspector General under section 7138(g)(2). We think however that the Secretary's authority to delegate cannot be considered in isolation from the provision whereby Congress granted specific subpoena power to the Inspector General, for that specific provision reflects the express congressional intent with respect to the subpoena power of the Inspector General. We therefore examine both possible statutory bases for the authority exercised.

### III.

The words of 42 U.S.C. § 7138(g)(2) negate the argument that in the exercise of his special subpoena power the Inspector General could compel Iannone to appear to give testimony. There is no reference in that section to a subpoena requiring the attendance of a witness to give oral testimony. On the contrary, the section refers only to "the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence." In short, the language is directed at the production of documentary evidence, as contrasted to oral testimony. The general word "information" is we think defined and limited by the language that follows, specifying written materials and documentary evidence. That language does not suggest that appearance to give oral testimony may be demanded. Applying the maxim that "a word is known by the company it keeps", *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961), we conclude that "all information" means all information in the form of documents. *See* 2A. C. Sands, Sutherland Statutory Construction § 47.16 (4th ed. 1973).

■ That Congress in other statutes has explicitly provided for the power to subpoena the attendance and testimony of witnesses reinforces our conclusion that the subpoena authority under section 7138(g)(2) is restricted to documentary information. *See, e. g.,* Defense Production Act of 1950, 50 U.S.C. App. § 2155 (1976); Federal Trade Commission Act, 15 U.S.C. § 49 (1976). The most striking example of such an explicit grant of power is found in the Federal Energy Administration Act, the predecessor of the Department of Energy Organization Act. In granting subpoena power to the Administrator the FEA Act expressly included the power to subpoena "the attendance and testimony of witnesses" in addition to the production of "all information, documents" and the like. 15 U.S.C. § 772(e)(1) (1976). This we believe makes it plain that if Congress had intended to authorize the Inspector General to compel the attendance of witnesses it would have specified that power in section 7138(g)(2). We therefore hold that the District Court rightly concluded that the Inspector General's special subpoena powers do not encompass the authority to compel the attendance of witnesses.

## IV.

As we have seen, section 645 of the Act, 42 U.S.C. § 7255, expressly grants to the Secretary or his agent, in exercising the Secretary's functions under the Act, the same subpoena powers authorized for the Federal Trade Commission under 15 U.S.C. § 49. The powers of the Federal Trade Commission under 15 U.S.C. § 49 include the authority to subpoena witnesses to testify. Acting pursuant to 42 U.S.C. § 7252 the Secretary purported to authorize the Inspector General to exercise the Secretary's subpoena powers with respect to the investigation of the alleged unauthorized disclosure of information to Iannone and API. The government contends that this delegation authorized the Inspector General by subpoena to require Iannone to appear as a witness. We do not agree.

In section 7138(g)(2) of the Act Congress granted specific subpoena powers to the Inspector General. Congress chose not to include among these powers the authority to issue a subpoena requiring a witness to appear and testify. As we have said, if Congress had intended to grant such power to the Inspector General it would have done so in specific language. If the government's theory is sound however the Secretary by delegating to the Inspector General the power to require the appearance of witnesses can thwart the congressional intent expressed in section 7138(g)(2). We cannot accept that theory; we hold that the Secretary cannot by delegation expand the limited powers expressly granted to the Inspector General by Congress.

■ Further analysis of the statute reinforces our opinion that the Secretary by delegation may not grant to the Inspector General power denied to him by the Congress. The Secretary is authorized by 42 U.S.C. § 7255 to issue subpoenas in carrying out the Secretary's functions under the Act, and this power he may delegate to one of his agents. The Secretary's functions however are distinct from those of the Inspector General. The Inspector General is not an agent of the Secretary, but is intended to be and is an independent officer. He is appointed by the President by and with the advice and consent of the Senate and may be removed only by the President who must communicate the reasons for any such removal to both houses of Congress. Although he reports to and is under the general supervision of the Secretary, there is no suggestion in the statute that he is subject to direction by the Secretary in carrying out his investigative functions. *See* 42 U.S.C. § 7138. The Secretary's role on the other hand is generally to supervise and direct the administration of the Department. 42 U.S.C. § 7131. His agents thus are the employees to whom he assigns the day-to-day operation of a regulatory agency. There is no suggestion that the Secretary can by delegation turn the Inspector General into an agent of the Secretary.

Our decision finds further support in the recently enacted Inspector General Act of 1978, which establishes twelve new inspector general offices in twelve government agencies. 5 U.S.C.A. App. I (Supp.1979). The new act parallels the Department of Energy Organization Act provision creating the office of inspector general within that agency.[1] The subpoena powers of each inspector general are the same as those of the DOE Inspector General. The new inspectors general, like the inspector general in DOE, report to and serve under the general supervision of their respective agency heads, but their investigatory powers and responsibilities are separate from those of the agency head. 5 U.S.C.A. App. I §§ 2–5. The provisions for their appointment and removal follow the same pattern as that prescribed by the DOE Act—appointment by the President based solely on merit, and removal by the President, who must inform Congress of the action taken and the underlying reasons therefor. *Id.*, Sec. 3(a). The legislative history makes clear that the provision for removal[2] is an "unusual step" included to insure the independence of the Inspectors General.

It is apparent that in enacting the Inspector General Act Congress sought to create a system of independent investigators. In doing so it granted each inspector general the same subpoena powers as those given to the Inspector General of DOE. If the agency head may delegate his subpoena authority to the agency's inspector general, however, the congressional scheme is disrupted, for the various agency heads may not all have the same subpoena powers. As a result the authority that could be delegated to an inspector general would vary from agen-

cy to agency.[3] We think it follows that when Congress provided specific but limited subpoena power for the Inspector General of DOE in the 1978 statute it fully expressed its intention to grant such power to him.

The District Court rightly held that the Inspector General of DOE had no authority by subpoena to require the appearance of Iannone as a witness. Accordingly the District Court's order denying enforcement of the subpoena is

*Affirmed.*

---

1. *See* 5 U.S.C.A. App. I § 6(a)(4) (Supp.1979); 42 U.S.C. § 7138(g)(2) (Supp. I 1977). *See also* 42 U.S.C. § 3525(a)(3) (1976) (same subpoena authority provided for Inspector General of Department of Health, Education and Welfare).

2. Sen.Rep. No. 95–1071, 95th Cong., 2d Sess. 9, *reprinted in* [1978] U.S.Code Cong. & Admin. News, pp. 2676, 2684. The Inspector General Act spells out the independence of the inspectors general in more detail than the DOE Act provides, by expressly prohibiting an agency director from preventing an inspector general

from conducting or completing an investigation. 5 U.S.C.A. App. I § 3(a). Prohibition of such action seems implicit in the concept of inspector general under the DOE Act as well.

3. The Secretary of Commerce does not have authority to subpoena witnesses; *see* 15 U.S.C. §§ 1501–1526 (1976); whereas, for example the Federal Trade Commission, like the Secretary of Energy, has that authority. 15 U.S.C. § 49 (1976).