Willard A. COVERT and Barbara Covert, husband and wife; Ramona Abbott, a single person; Ted Nichol and Yvonne Nichol, husband and wife; Jerome B. Lee and Jeannine Lee, husband and wife; Thomas G. Humphrey and Patty Humphrey, husband and wife; William P. Espinosa Jr. and Janet Espinosa, husband and wife; Aldo Pineda and Bertha Pineda, husband and wife; Eldon Schlabach and Marlene Schlabach, husband and wife; Steven L. Bohan, a single person; Mark Studd, a single person; Larry Spurgin, a single person; Lawrence Bills and Iva Bills, husband and wife; and Earl Penor and Berneice Penor, husband and wife, Plaintiffs,

v.

John HERRINGTON, Secretary, Department of Energy, United States of America, Defendant.

No. C–86–730–JLQ.

United States District Court, E.D. Washington.

June 18, 1987.

Daryl D. Jonson, Richland, Wash., and James E. Egan, Kennewick, Wash., for plaintiffs.

Robert S. Linnell, Asst. U.S. Atty., Yakima, Wash., for defendant.

## ORDER DENYING PLAINTIFFS' AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

QUACKENBUSH, District Judge.

BEFORE THE COURT are the summary judgment motions of plaintiffs (Ct.Rec. 10, 18) and the government (Ct.Rec. 14), heard with oral argument May 27, 1987, in Yakima, Washington. Appearing for plaintiffs were Daryl D. Jonson and James E. Egan; Assistant United States Attorney Robert S. Linnell appeared for the government.

This action was brought for violations of the Privacy Act, 5 U.S.C. § 552a after disclosures of records by the Department of Energy were used for criminal indictments against seventeen (17) "job shoppers" at the Hanford Nuclear Reservation. Only one defendant—William A. Covert—was brought to trial, which resulted in a judgment of acquittal. The remaining cases were dismissed or had been subject to pretrial diversion. Trial of this matter revealed that the plaintiffs were not government employees, but were employees of a company who provided workers for companies such as Westinghouse and General Electric who had contracts with the government.

Thirteen subjects of those criminal prosecutions brought this action claiming that disclosure of their personnel security files to the Department of Energy's (DOE's) Inspector General (IG) and to the Department of Justice (DOJ) was unlawful under 5 U.S.C. § 552a. They further claimed that the disclosures for use in a criminal prosecution were in direct contravention of the representations made to the job shoppers in "Supplement to Form DOE–1", which stated in pertinent part:

> Personal information on the form(s) will be used to determine an individual's eligibility for a DOE personnel security clearance or access authorization.
>
> ... The name of the individual, Social Security number, and date and place of birth are used by DOE to establish and maintain records of DOE Personnel Clearance actions.... Access to or use of the information provided is permitted only to the authorized Federal Government investigative agencies conducting the investigations and to DOE personnel directly involved in the processing of the determination of the eligibility of the individual for security clearance or access authorization.

. . . . .

Att. to Ct. Rec. 213.

Rather than using the information solely to determine eligibility for security clearances, argue plaintiffs, the DOE unlawfully disclosed it in an investigation of whether job shoppers were falsely claiming permanent residences more than 50 miles from the job site in order to obtain per diem payments.

This investigation was spearheaded after Congressman Sid Morrison received a letter from a constituent alleging that a number of people employed by subcontractors of DOE were fraudulently receiving per diem payments. An auditor in the DOE's Office of the Inspector General (IG), James Steven Abernethy, examined the contract files—including Certificates of Permanent Residence—maintained by Westinghouse Hanford Co. and Rockwell Hanford Operations. To check the information on the Certificates of Permanent Residence, Mr. Abernethy used local telephone directories, commercial directories and property records from the Benton and Franklin County Assessors' offices. *See,* Exh. 1 to Ct.Rec. 15.

The audit information gathered by Mr. Abernethy was provided to IG Special Agents Donald Farmer and Richard Young, who then examined personnel security clearance files maintained pursuant to the Privacy Act, 5 U.S.C. § 552a, by the DOE's Safeguards and Security Division. According to the Affidavits of Mr. Farmer and Mr. Young (Exh. 3 and 4 to Ct. Rec. 15) these security files were reviewed

> ... to confirm the information developed by Mr. Abernethy regarding these individuals' addresses and length of residence. The review also revealed (1) current employment status; (2) current residence; and (3) other information relevant to our investigation of individual claims for per diem allowance.
>
> We then compared the information obtained by Mr. Abernethy and from the personnel security files, with the data these individuals had provided in the Certificates of Permanent Residence to determine if there were discrepancies between the two sets of records. We used this information to aid in the establishment of the veracity of the statements in the Certificates of Permanent Residence.

Agents Farmer and Young then provided the IG audit and the results of their investigation to the United States Attorney, who decided to prosecute. An "oral summary of the results of the investigation" was also presented to the grand jury, which indicted the plaintiffs herein.

The motions before the court involve the propriety of disclosures to both the IG special agents and to the Department of Justice. The central issue, as discussed below, is whether the Department of Energy could turn over the subject records to the Department of Justice without complying with the Privacy Act's specific provision regarding disclosure to another governmental entity for law enforcement purposes. Under that provision, 5 U.S.C. § 552a(b)(7), disclosure is permitted where it would be

(7) to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought.

This procedure was designed to balance individual rights with agency uses of information by "assuring some high level evaluation of the need for the information." *DOE v. DiGenova*, 779 F.2d 74, 84 (D.C. Cir.1985).

The DOJ did not avail itself of the § 552a(b)(7) procedure, nor did it seek disclosure "pursuant to the order of a court of competent jurisdiction" under § 552a(b)(11). In the motions presently before the court, the government states that disclosure was permissible under two other statutory exceptions to the rule of non-disclosure, *i.e.*, § 552a(b)(1) and (b)(3). That statutory language is as follows:

(b) Conditions of Disclosure. No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of,[1] the individual to whom the record pertains, unless disclosure of the record would be—

(1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties;

(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;

(the above-referenced (a)(7) defines "routine use" as, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected.")

. . . . .

(e) Agency requirements. Each agency that maintains a system of records shall—

. . . . .

(4) subject to the provisions of paragraph 11 of this subsection [regarding publication in the Federal Register of notice and an opportunity to be heard on new and intended uses], publish in the Federal Register at least annually a notice of the existence and character of the system of records, which notice shall include—

. . . . .

(D) each routine use of the records contained in the system, including the categories of users and the purpose of such use . . .

## "NEED TO KNOW" EXCEPTION (5 U.S.C. § 552a(b)(1)

The threshold issue under this exception is whether the DOE's Inspector General had a need for the subject records in the performance of his duties. A corollary issue is whether the records could be disclosed to the Department of Justice, which is not an "agency which maintains the records" under (b)(1). Plaintiffs, of course, answer both queries in the negative.

Plaintiffs emphasize that the Inspector General has no authority to determine eligibility for access authorizations, the purpose for which the subject information was collected. The government does not dispute the IG has no security functions.

However, under 42 U.S.C. § 7138(b)(1), the Inspector General must

. . . supervise, coordinate, and provide policy direction for auditing and investigate activities relating to the promotion of economy and efficiency in the administration of, or the *prevention or detection of fraud or abuse in, programs and operations of the Department* (emphasis added).

Under 42 U.S.C. § 7138(g)(1), the Inspector General is authorized

---

**1.** It is undisputed that plaintiffs herein did not consent to disclosure of the records.

(1) to have access to all records, reports, audits, reviews, documents, papers, recommendations, and other material available to the Department which relate to programs and operations to which the Inspector General has responsibilities under this section....

Finally, under 42 U.S.C. § 7138(j),

In carrying out his duties and responsibilities under this section, the Inspector General shall report expeditiously to the Attorney General whenever the Inspector has reasonable grounds to believe there has been a violation of federal law.

Plaintiffs argue that because the information at issue was collected for security purposes and the Inspector General has no national security function or authority, he had no responsibilities which would give rise to a "need to know" the subject information. Furthermore, since the IG is an employee of the DOE, "his disclosure of the records to the Department of Justice is not authorized under 5 U.S.C. § 552a(b)(1)" which contemplates disclosure only "to those officers and employees of the agency which maintains the record...." Mr. Jonson noted in oral argument that 42 U.S.C. § 7138(j) contemplates a "report" to the Attorney General but does not authorize the turning over of records, which could be obtained by other means.

The government, in response, argues that 42 U.S.C. § 7138(b)(1) requires access to information maintained in DOE records which may be relevant to an investigation of potential fraud. It contends that Special Agents Farmer and Young clearly needed the information in the personnel security files in the performance of their duties, and thus the exception of 552a(b)(1) is invoked.

The government cites *Beller v. Middendorf,* 632 F.2d 788 (9th Cir.1980), in support of the applicability of 552a(b)(1). In *Beller,* the Circuit found no violation of the Privacy Act where information about a Navy enlistee's homosexual activities—discovered during a routine investigation—was forwarded to the Naval Investigative Service and disclosed to the commanding officer of plaintiff's naval installation. The officer had used the information in administrative proceedings to effect plaintiff's discharge. The Privacy Act discussion in *Beller* is confined largely to footnote 6 at p. 798. Citing the "need to know" language of § 552a(b)(1), the court stated:

Disclosure by the NIS to Captain Ward, as Commanding Officer of the installation, was entirely proper. The commanding officer is responsible for the "safety, well-being and efficiency of his entire command." Captain Ward had a need for information disclosing a ground for discharging someone under his command.

Plaintiffs have attempted to distinguish *Beller,* contending that "the oral statement voluntarily made by Beller was never used for any purpose other than determining his suitability for a security clearance, a use obviously compatible with the purpose for which the underlying records and the oral statement were made in the first place." Beller knew the reason for his interview, *i.e.,* to upgrade his security clearance, as well as the probable effect of his oral statement concerning his homosexuality.

Plaintiffs also purport to distinguish two other cases cited by the government, *Howard v. Marsh,* 785 F.2d 645 (8th Cir.1986) and *Hernandez v. Alexander,* 671 F.2d 402 (10th Cir.1982), involving examinations of Equal Employment Opportunity files after Complaints were filed. In these situations, the Privacy Act did not apply where the complaining party had requested assistance from a federal agency necessitating disclosure of the otherwise-protected information. The court agrees with plaintiffs that this is distinguishable from the case at bar.

 Despite the dearth of applicable case law authority on the subject, it appears to this court that under 42 U.S.C. § 7138(b)(1), the Inspector General had not only the authority but the duty to gain access to relevant information to detect potential fraud in the per diem program. However, the IG was *not* authorized to disclose the information to the Department of Justice under 5 U.S.C. § 552a(b)(1), which allows for disclosure to officers "of *the agency* which maintains the record ..." (Emphasis added.) Indeed, the

government's briefing seems to acknowledge this, as the government relies only upon the "routine use" exception of (b)(3) for disclosure to the DOJ (*see, e.g.,* Ct. Rec. 15).

The courts must scrupulously guard the privacy of records transferred from one agency to another for different purposes. As a co-sponsor of the Privacy Act, Senator Percy, commented:

> In and of itself, any of these personal files is not particularly ominous. Most people readily accept the fact that data gathering systems are necessary to our institutions if they are to keep pace with the complex needs of a modern society. Without records there would be chaos. The real problem comes, however, when these information systems are linked with one another and are used to exchange information without the knowledge or consent of the individuals concerned. *When personal data collected by one organization for a stated purpose is used and traded by another organization for a completely unrelated purpose, individual rights could be seriously threatened.* (emphasis added)

102 Cong.Rec. 36893–4 (1974), quoted in *Ash v. United States,* 608 F.2d 178, 180 (5th Cir.1979, *amended* 1980).

At the hearing on May 27, the court stated its initial impression that if the IG investigators had reasonable grounds to believe a crime had been committed, they probably were required to report it to the Department of Justice under 42 U.S.C. § 7138(j). The court now feels compelled to modify its position and recalls the truth spoken by the late Justice Frankfurter: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Bank,* 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949) (dissenting opinion).

■ Clearly, the legislative history of § 7138(j) indicates that the Inspector General is not exempted from complying with the Privacy Act (see discussion of legislative history, below, re "routine use" exception). Otherwise, the result would be a

thwarting of the protective provisions of the Privacy Act, intended to "prevent the kind of illegal, unwise, overbroad, investigation and record surveillance of law abiding citizens produced in recent years from actions of some overzealous investigators, and the curiosity of some government administrators, or the wrongful disclosure and use, in some cases, of personal files held by Federal agencies." 779 F.2d at 84, citing S.Rep. No. 1183, 93d Cong., 2d Sess. 1 (1974), U.S.Code Cong. & Admin.News 1974, p. 6916, *reprinted in Legislative History* at 154.

In the case at bar, the Department of Justice could have requested the subject records under § 552a(b)(7), specifying in writing the particular portions of the records requested and the law enforcement activity for which they were sought, but it did not. *See, Doe v. Naval Air Station, Pensacola, Fla.,* 768 F.2d 1229, 1232–1233 (11th Cir.1985). Nor did it seek a court order under (b)(11). Disclosure to the DOJ, then, was proper only if authorized by the "routine use" exception of § 552a(b)(3).

## "ROUTINE USE" EXCEPTION

As stated above, 5 U.S.C. § 552a(b)(3) authorizes disclosure of agency records for uses which are compatible with the purpose for which they were collected, provided that the agency publish notice of each routine use of its records, "including the categories of users and the purpose of such use." Under DOE System of Records DOE 43 (Att. 12 to Ct. Rec. 10, 47 *Federal Register* at p. 14312), "Personnel Security Clearance Files," the permissible routine uses are those "as listed in Appendix B." According to the pertinent part of Appendix B,

> 1. In the event that a record within this system of records maintained by this agency indicates a violation or potential violation of law, whether civil, criminal or regulatory in nature, and whether arising by general statute or particular program pursuant thereto, the relevant records in the system of records may be referred as a routine use to the appropriate agency, whether Federal, State, local,

or foreign, charged with the responsibility of investigating or prosecuting such violation or charged with enforcing or implementing the statute, or rule, regulation or order issued pursuant thereto.

The government argues that once Special Agents Farmer and Young obtained the personnel security records, they became incorporated into System of Records DOE–54, "Investigative Files of Inspector General." Accordingly, when the records were released to the DOJ, "the record source of the information was DOE System of Records DOE–54 and not DOE–43." The "Routine Uses" description in DOE–54 states that "[t]he records are used in IG investigations and for the referral of violations of law to law enforcement authorities. Records may be disclosed in accordance with the routine uses listed in Appendix B," quoted above.

Plaintiffs counter that in a January 13, 1986, DOE memorandum regarding access to DOE personnel security clearance files by IG investigators, it is stated that "[t]he IG investigator will be reminded that the information is protected under the Privacy Act and that he/she is responsible for the proper safeguarding of information. Security must be notified if any of the reproduced documents are provided to a third agency." Att. 1 to Ct. Rec. 10. Furthermore, allege plaintiffs, personnel security records do not fit the DOE–54 description of "investigative transcripts, memoranda and letters," and even if they did, "disclosure is still authorized only for the routine uses listed in Appendix B to the Privacy Act notice," which do not include disclosure to the IG or DOJ. Ct. Rec. 22, pp. 12–13.

Plaintiffs give four basic reasons why disclosures to the Inspector General were not authorized as "routine uses." First, the statute at § 552a(a)(7) defines a "routine use" as being a use "for a purpose which is compatible with the purpose for which (information) is collected." Here, the records were collected for the purpose of determining eligibility for an access authorization. "Use of the information by the Inspector General for accumulating evidence to be used in a criminal prosecution unrelated to security is obviously incompatible with the purpose for which the information was gathered by DOE." Ct.Rec. 11, p. 9.

Secondly, (b)(3) authorizes disclosure of a record for "routine use" if the routine use is published in the Federal Register as required in § 552a(e)(4)(D).

The "routine uses" upon which DOE relies, and appearing at 47 FR 14333, Appendix B, do not authorize the release of records to the Attorney General as a "routine use".... Further, under DOE–43 and DOE–47 "Safeguards," access to this system is limited to employees *of the agency* having a "need to know." There is no demonstrable "need to know" shown for the Inspector General.

Thirdly, argue plaintiffs, § 552a(e)(3)(B) imposes an affirmative duty upon DOE to inform individuals in writing *when the information is collected* of the routine uses to which the information may be put. The DOE failed to so inform plaintiffs, they argue. However, it should be noted that this language actually states:

(e) Agency Requirements. Each agency that maintains a system of records shall—

. . . . .

(3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—

(B) the principal purpose or purposes for which the information is intended to be used.

Thus, the DOE need only inform of "the *principal* purpose or purposes."

Finally, plaintiffs argue that the Supplement to Form DOE–1 (quoted on the top of page 579 of this memo) "*affirmatively* told the plaintiffs that the information provided ... would not be used for any purpose other than determining eligibility for an access authorization."

As to disclosure to the Department of Justice, plaintiffs note that Appendix B of the Privacy Act Notice (Att. 12 to Ct. Rec. 10) would permit disclosure as a "routine

use" to outside law enforcement agencies only in circumstances where the records themselves indicate a violation of law. "The government does not even contend that the records in issue in this proceeding contain any reasonable or probable cause to believe that any of the plaintiffs committed a crime." Plaintiffs cite *Doe v. DiGenova*, 779 F.2d 74 (D.C.Cir.1985), in which the court found that disclosure of plaintiff's psychiatric records to a grand jury pursuant to subpoena was *not* a routine use. *DiGenova* addressed a "routine use" definition identical to the Appendix B definition in the case at bar and determined it clearly indicated that it allows for referral of records to law enforcement officials "only when the records themselves indicate a violation of law." 779 F.2d at 86.

■ The government attempts to distinguish *DiGenova* by stating that in the present case, "the investigative records, when viewed in toto, themselves contained sufficient information to lead the IG special agents to believe a potential violation of law had occurred." However, plaintiffs have raised a genuine issue of material fact, Rule 56(c), Fed.R.Civ.P., as to whether a potential violation of law was apparent from the face of the protected records themselves.

It also appears to the court that there are genuine issues as to whether disclosure to the IG was compatible with the purpose for which the information was gathered, particularly where the Supplement to Form DOE–1 affirmatively represented that the information gathered would only be used for security purposes. While 42 U.S.C. § 7138(j) requires the Inspector General to report expeditiously to the Attorney General his reasonable belief that federal criminal violations may have occurred, the affidavits of Special Agents Farmer and Young fail to spell out their "reasonable grounds." The duties and responsibilities of the Inspector General must be strictly contoured, and cannot be expanded by implication. *United States v. Iannone*, 610 F.2d 943, 946 (D.C.Cir.1979). Moreover, it would still appear that the "reasonable grounds" must be evident from the face of

the records themselves, which has not been established. If the records do not, on their face, indicate reasonable grounds to believe there have been criminal violations, the Department of Justice should have obtained them under § 552a(b)(7) or (b)(11).

This result is confirmed by the legislative history of the Inspector General Act, cited by neither party in this litigation. 42 U.S.C. § 7138(j), on which the government relies, was added to the Department of Energy Act in 1980. The legislative history of the amendment indicates that the provision set forth in (j), among others, simply "extends the requirements of the Inspector General Act of 1978 dealing with complying with GAO audit standards" to the Department of Energy's Inspector General. Act of April 3, 1980, Pub.L. No. 96–226, 1980 U.S.Code Cong. & Admin. News 732, 746. Thus, one is directed to the Inspector General Act of 1978, 5 U.S.C. Appendix at 695, which provides at § 4(d) language identical to 42 U.S.C. § 7138(j) regarding the Inspector General's duty to report expeditiously to the Attorney General "reasonable grounds to believe there has been a violation of Federal criminal law."

The legislative history of the Inspector General Act of 1978 discussed at some length potential conflicts with the Privacy Act. *See, Senate Report*, Act of Oct. 1, 1978, Pub.L. No. 95–452, 1978 U.S.Code Cong. & Admin.News 2676, 2687–2689. The Senate Report noted that, as passed by the House of Representatives, the Inspector General Bill included a provision stating:

> In the event any record or other information requested by the Inspector General under subsection (a)(1) or (a)(2) is not considered to be available under the provisions of sections 552a(b)(1), (3) or (7) of title 5, United States Code, such record or information shall be available to the Inspector General in the same manner and to the same extent it would be available to the Comptroller General.

The Senate Report noted that this language was not in the prior legislation establishing an Office of Inspector General in the Department of Energy.

However, the Senate Report found it unnecessary to "create an exemption for the new Inspector and Auditors General comparable to the existing exemption granted to the Comptroller General," and did not include the provision in the bill as reported. It is not included in the Act. According to the Senate committee,

> The House language would grant to an Inspector and Auditor General a power that no other official of the executive branch has—the authority to require the transfer of personal information from any agency to the Inspector and Auditor General without regard for the protections of the Privacy Act. Currently, the President, department Secretaries and heads of agencies, and all individual members of Congress and committees must comply with the Privacy Act. The committee can see no reason for granting special status to the Inspector and Auditors General....
>
> Complying with the Privacy Act does not mean that an Inspector and Auditor General will be unable to obtain needed information to perform his responsibilities. It simply means that the information must be obtained in conformity with the exemptions and procedures of the act. Under the Privacy Act, for instance, all information within the agency would be available to the Inspector and Auditor General, based on the "intra-agency" exemption. Information sought from other agencies could generally be obtained under the "routine use" or "law enforcement" exemptions of the act.

*Id.* at 2688.

In the present case, while material factual issues exist as to the applicability of the "routine use" exception (*i.e.*, do the records themselves indicate a violation of law?), the "law enforcement" exemption of § 552a(b)(7) could have been invoked.

The Senate Report also stated that the "expeditious reporting" requirement will allow an Inspector General to "make prompt and direct referrals to the Justice Department when he has reasonable grounds to believe there has been a violation of Federal criminal law," improving a "slower and more cumbersome" referral process. However, this does not infer that an Inspector General need not comply with the Privacy Act in obtaining protected records.

The government has also argued that no violation of the Privacy Act occurred because the information concerning plaintiffs' residences was already known and thus no disclosure occurred. "A dissemination of information to ... persons who were previously aware of the information is not a disclosure under the Privacy Act." *Federal Deposit Ins. Corp. v. Dye,* 642 F.2d 833, 836 (5th Cir.1981). However, the court is unable to determine, on the existing state of the record, what information was disclosed to various parties herein and at what points in time. This also precludes an entry of summary judgment as to the plaintiffs. There are material factual issues outstanding as to what specific information was disclosed to the Inspector General special agents, and by them to the Department of Justice, sufficient to avoid summary judgment for plaintiffs.

Accordingly, IT IS ORDERED that the summary judgment motions of plaintiffs (Ct.Rec. 10, 18) and the government (Ct. Rec. 14) are DENIED.

IT IS SO ORDERED. The Clerk is directed to enter this Order and forward copies to counsel.