**AMERICAN FEDERATION OF GOV-
ERNMENT EMPLOYEES,AFL–
CIO, et al., Appellees,**

v.

**DEPARTMENT OF HOUSING &
URBAN DEVELOPMENT,
et al., Appellants.**

**AMERICAN FEDERATION OF GOV-
ERNMENT EMPLOYEES, AFL–
CIO, et al., Appellees,**

v.

**William J. PERRY, Secretary of
Defense, et al., Appellants.**

Nos.96–5108, 96–5141.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 25, 1997.

Decided July 15, 1997.

Edith S. Marshall, Assistant U.S. Attorney, argued the cause for appellants in case no. 96–5108, with whom Frank W. Hunger, Assistant Attorney General, Stephen W. Preston, Deputy Assistant Attorney General, Eric H. Holder, Jr., U.S. Attorney, R. Craig Lawrence, Assistant U.S. Attorney, Leonard Schaitman, Attorney, and Freddi Lipstein, Senior Counsel, U.S. Department of Justice, were on the briefs.

Kevin M. Grile, Assistant General Counsel, American Federation of Government Employees, AFL–CIO, argued the cause for appellees, with whom Mark D. Roth, General Counsel, and Charles A. Hobbie, Deputy General Counsel, were on the brief.

Gregory O'Duden, Elaine Kaplan and Barbara A. Atkin were on the brief for amicus curiae National Treasury Employees Union in case no. 96–5108.

Freddy Lipstein, Senior Counsel, U.S. Department of Justice, argued the cause for appellants in case no. 96–5141, with whom frank W. Hunger, Assistant Attorney General, Stephen W. Preston, Deputy Assistant General, Eric H. Holder, Jr., U.S. Attorney, R. Craig Lawrence and Edith S. Marshall, Assistant U.S. Attorneys, and Leonard Schaitman, Attorney, U.S. Department of Justice, were on the briefs.

Stuart A. Kirsch, Assistant General Counsel, American Federation of Government Employees, AFL–CIO, argued the cause for appellees, with whom Mark D. Roth, General Counsel, was on the brief.

Gregory O'Duden, Elaine Kaplan and Barbara A. Atkin were on the brief for amicus curiae National Treasury Employees Union in case no. 96–5141.

Before GINSBURG, SENTELLE and RANDOLPH, Circuit Judges.

SENTELLE, Circuit Judge:

In companion cases, the Department of Housing and Urban Development ("HUD") and the Department of Defense ("DOD") challenge orders of the district court enjoin-

ing the agencies from requiring designated employees to answer questionnaires concerning, among other things, illegal drug use and financial history. Because the two cases present the same issue as a matter of constitutional law, we will address them with one opinion. The district court held that certain questions posed by HUD and DOD violate the employees' constitutional right to keep private information with which the government does not have a legitimate concern. While we have grave doubts that such a right exists, we hold that, even assuming a constitutional right to nondisclosure of personal information, the questions would be permissible. We reverse.

## I. HUD BACKGROUND

Regulations promulgated by the Office of Personnel Management ("OPM") require that agencies evaluate the risk level of every competitive service position in terms of the potential for adverse impact from the misconduct of an employee in that position. 5 C.F.R. § 731.302(a). Employees may be subjected to background investigations, the scope of which is dictated by the risk level. *Id.* In this case, HUD determined that approximately 2,500 employees would potentially be investigated using the Standard Form 85P, Questionnaire for Public Trust Positions. ("SF 85P"). A public trust position is one "involving policymaking, major program responsibility, law enforcement duties, or other duties demanding the highest degree of public trust; and positions involving access to or operation or control of unclassified confidential or financial records, with a relatively high risk for causing grave damage or realizing a significant personal gain." 61 Fed.Reg. 398.

Information elicited by the SF 85P is used to determine whether the person is suitable for employment or, in the case of incumbent employees, is suitable for continued employment, in a public trust position. 5 C.F.R. §§ 731.301, 731.302. Failure to provide the requested information may result in removal from federal employment. A challenge to the SF 85P was brought by individual incumbent employees at HUD and by the American Federation of Government Employees ("AFGE") on behalf of its members. The individual plaintiffs, all of whom are long-term employees, were determined to be in "public trust positions" because of their access to a computer database known as the Line of Credit Control System ("LOCCS") which controls $10 billion in annual disbursements. The individual plaintiffs each have "review" privileges under LOCCS, meaning that they can approve and reject vouchers, alter data, and approve payments under certain circumstances. HUD determined that employees with access to LOCCS were properly designated public trust employees because federal funds could be lost or redirected by the employees' misconduct and because the privacy interests of program beneficiaries could be compromised.

The plaintiffs sought to enjoin HUD from subjecting current HUD employees to periodic reinvestigation using the SF 85P. In particular, the plaintiffs challenged three items on the form. Question 21 on the SF 85P asks:

a. In the last year, have you *illegally* used any controlled substance, for example, marijuana, cocaine, crack cocaine, hashish, narcotics (opium, morphine, codeine, heroin, etc.), amphetamines, depressants (barbiturates, methaqualone, tranquilizers, etc.), hallucinogenics (LSD, PCP, etc.) or prescription drugs?

b. In the last 7 years, have you been involved in the illegal purchase, manufacture, trafficking, production, transfer, shipping, receiving, or sale of any narcotic, depressant, stimulant, hallucinogen, or cannabis, for your own intended profit or that of another?

Question 22 requires employees to reveal certain personal financial information. It reads as follows:

a. In the last 7 years, have you, or a company over which you exercised some control, filed for bankruptcy, been declared bankrupt, been subject to a tax lien, or had legal judgment rendered against you for a debt?

b. Are you now over 180 days delinquent on any loan or financial obligation?

Finally, the form requires the employee to sign a release that states:

> I authorize any investigator, special agent, or other duly accredited representative of the authorized Federal agency conducting my background investigation, to obtain any information relating to my activities from individuals, schools, residential management agents, employers, criminal justice agencies, credit bureaus, consumer reporting agencies, collection agencies, retail business establishments, or other sources of information. This information may include, but is not limited to, my academic, residential, achievement, performance, attendance, disciplinary, employment history, criminal history record information, and financial and credit information. I authorize the Federal agency conducting my investigation to disclose the record of my background investigation to the requesting agency for the purpose of making a determination of suitability or eligibility for a security clearance.

The employees and the AFGE challenged the questions on both constitutional and statutory grounds. The government responded by moving to dismiss or in the alternative for summary judgment. Plaintiffs also moved for summary judgment. Granting the plaintiffs' motion, the district court held that "[t]he Constitution protects a citizen's privacy interest, *inter alia*, with respect to personal information with which the government does not have a legitimate concern." According to the district court, courts are required to "balance the individuals' interests in nondisclosure against the government's interest in obtaining the information." Accordingly, the district court concluded that the government had not presented an adequate justification for compelling disclosure of the drug use or financial history, or for compelling the plaintiffs to sign the release form. This appeal followed.

## II. DOD BACKGROUND

DOD regulations stipulate that a person is eligible for access to classified information or for placement in a position deemed to be "sensitive" only if "based on all available information, the person's loyalty, relia-bility, and trustworthiness are such that entrusting the person with classified information or assigning the person to sensitive duties is clearly consistent with the interests of national security." 32 C.F.R. § 154.6(b). Incumbent employees may be subject to reinvestigation to examine their fitness for continued employment. To evaluate a person's fitness for employment in a position with access to classified information or in a position designated "critical sensitive," DOD has used questionnaires known as the DD Form 398 and the DD Form 398–2 ("DD Forms") which have recently been superseded by the Standard Form 86 ("SF 86"). Failure to provide requested information might result in the denial of security clearance and/or removal from a sensitive position.

Individual employees and the AFGE brought suit alleging that the DD Forms violate the employees' constitutional right to privacy, their fifth amendment right against selfincrimination, and the Privacy Act, 5 U.S.C. § 552a. The individual plaintiffs, all incumbent civilian employees of DOD, include a cement finisher at Robins Air Force Base, a sheet metal worker at Robins, and an administrative contracting officer.

The challenged items on the DD forms include a question regarding financial history which asks:

> a. Have you ever filed a petition under any chapter of the bankruptcy code *(to include Chapter 13)*?
>
> b. Have you ever had your wages garnished or anything repossessed?
>
> c. Have you ever had a lien placed upon your property for failing to pay taxes?
>
> d. Do you have any judgment against you which you have not paid?
>
> e. Are you now or have you been significantly delinquent on debts *(Paid more than 120 days from scheduled payment due date)*?

Another challenged question asks:

> a. Have you ever been arrested, charged, cited, held, or detained by Federal, State, or other law enforcement or juvenile authorities regardless of whether the charge

was dropped or dismissed or you were found not guilty?

DOD considers an employee's arrest record even when the record has been expunged. 32 C.F.R. pt. 154, App. H. A question regarding substance abuse asks:

a. Have you ever tried or used or possessed any narcotic *(to include heroin or cocaine)*, depressant *(to include quaaludes)*, stimulant, hallucinogen *(to include LSD or PCP)*, or cannabis *(to include marijuana or hashish)*, or any mind-altering substance *(to include glue or paint)*, even one time or on an experimental basis, except as prescribed by a licensed physician?

b. Have you ever been involved in the illegal purchase, manufacture, trafficking, production, or sale of any narcotic, depressant, stimulant, hallucinogen, or cannabis?

c. Have you ever misused or abused any drug prescribed by a licensed physician for yourself or for someone else?

d. Has your use of alcoholic beverages *(such as liquor, beer, wine)* ever resulted in the loss of a job, disciplinary action, arrest by police, or any alcohol-related treatment or counseling *(such as for alcohol abuse or alcoholism)*?

DOD also poses questions regarding the mental health of the employee:

e. Have you ever been treated for a mental, emotional, psychological, or personality disorder/condition/problem?

f. Have you ever consulted or been counseled by any mental health professional?

Finally, the DD Forms require individuals to sign a release authorizing

any duly accredited representative of the Department of Defense … to obtain any information relating to my activities from individuals, schools, residential management agents, employers, criminal justice agencies, financial or lending institutions, credit bureaus, consumer reporting agencies, retail business establishments, medical institutions, hospitals or other repositories of medical records. This information may include, but is not limited to, my academic, residential, achievement, performance, attendance, personal history, disci-

plinary, criminal history record, arrest, conviction, medical, psychiatric/psychological, and financial and credit information.

The district court granted a preliminary injunction against the administration of the questionnaire. This court reversed in *NFFE v. Greenberg*, 983 F.2d 286 (D.C.Cir.1993), holding that the plaintiffs were unlikely to succeed in their facial attack. The plaintiffs then amended their complaint and the government moved to dismiss or in the alternative for summary judgment. Plaintiffs cross-moved for summary judgment. While the action was pending, the DD Forms were superseded by the SF 86 effective January 1, 1996. The SF 86 provides that answers to the drug use question will not be used in subsequent criminal proceedings and limits inquiries regarding financial history, drug use, and mental health to the past 7 years. The district court then issued an opinion dismissing the AFGE for lack of standing because the class was not sufficiently tailored. With regard to the claims of the individual plaintiffs, the district court granted summary judgment to the plaintiffs on the question whether the government could compel disclosure of expunged criminal history. The court held that this information was relevant to trustworthiness but that there was a strong individual privacy interest in resisting disclosure. The district court permitted the substance abuse question only for two plaintiffs who had previously reported substance abuse to DOD and had taken related leaves of absence. As for the other plaintiffs, the district court concluded that there was not a sufficient nexus between the positions occupied by the plaintiffs and the dangers cited by the government. The court disposed of the mental health question similarly, permitting it to be asked only of the plaintiffs with a background of substance abuse. With one exception the court held that the interest of the plaintiffs in financial privacy outweighed the government's interest in obtaining the information; the court permitted the questions to be posed only to a contract warrant officer with authority to bind the government. In regard to the release form, the district court held that the release form could not be constitutionally required of any of the plaintiffs. Because

none of the plaintiffs was in a position to pose a direct threat to national security, "so vast an intrusion by the government" could not be justified. Finally, the court held that the illegal drug use question on the SF 86 would not violate the Fifth Amendment because it contains the equivalent of a use immunity statement. Because the DD Forms did not contain such a statement, the court held that their use was unconstitutional. The government filed the instant appeal. Because the questionnaires administered by HUD and DOD raise similar issues, we decided to hear the cases together.

## III. ANALYSIS

We begin our analysis by expressing our grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of personal information. Were we the first to confront the issue we would conclude with little difficulty that such a right does not exist, but we do not, of course, write on a blank slate. The Supreme Court has addressed the issue in recurring dicta without, we believe, resolving it. In *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977), the Court considered whether the State of New York could constitutionally keep a centralized computer file of the names of persons who had obtained dangerous prescription drugs. The Court stated, "The cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions....[T]he New York program does not, on its face, pose a sufficiently grievous threat to either interest to establish a constitutional violation." *Id.* at 598–600, 97 S.Ct. at 877. The opinion then concluded with a disclaimer that stated that the government duty to avoid disclosure of personal information only *"arguably* has its roots in the Constitution.... We ... need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data.... We simply hold that this record does not establish an invasion of any right or liberty protected by the Fourteenth Amendment." *Id.*

at 605–06, 97 S.Ct. at 879–80 (emphasis added).

The Court was equally Delphic in *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), in which the former President challenged a statute that required disclosure of documents and tape recordings kept during his presidency. Under the Act and the regulations, the President was required to turn over both public and private materials. Archivists would then remove any personal materials. The Court stated, "We *may* agree with appellant that, at least when Government intervention is at stake, public officials, including the President, are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity." *Id.* at 457, 97 S.Ct. at 2797 (emphasis added). The Court then held that, even assuming that President Nixon had a legitimate expectation of privacy in the materials, the public interest in preserving the documents was sufficiently important to uphold the Act.

If the Court's apparent hesitance to recognize such a right were not enough to give us pause, we also note that the cases cited in *Whalen* as evidence of "the individual interest in avoiding disclosure" confirm our doubts that the Constitution protects a general right to privacy in the nondisclosure of information. The Court cited two dissents, *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting) (arguing that the Constitution protects "the right to be let alone—the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment."), and *California Bankers Assn. v. Shultz,* 416 U.S. 21, 85–86, 94 S.Ct. 1494, 1529, 39 L.Ed.2d 812 (1974) (Douglas, J., dissenting) ("[W]hen ... the Government gets large access to one's beliefs, ideas, politics, religion, cultural concerns, and the like—the Act should be 'narrowly drawn' ... to meet the precise evil."), neither of which argued for a general constitutional right to

privacy in the nondisclosure of information. The Court also cited *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965) ("[T]he First Amendment has a penumbra where privacy is protected from governmental intrusion."), *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (holding a statute prohibiting private possession of obscene material unconstitutional), and Justice Powell's concurrence in *California Bankers,* 416 U.S. at 78–79, 94 S.Ct. at 1526 ("[T]ransactions can reveal much about a person's activities, associations, and beliefs. At some point, governmental intrusion upon these areas would implicate legitimate expectations of privacy."). One reading of these citations, perhaps the one intended in *Whalen,* is that the Constitution protects against mandatory disclosure only where it threatens a particularized right such as the associational rights protected by the First Amendment. *See NAACP v. Alabama,* 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958) ("[C]ompelled disclosure of affiliation with groups engaged in advocacy may constitute ... a restraint on freedom of association.").

This court has not purported to resolve the issue, although we have suggested in dicta the existence of a constitutional right to privacy in personal information. *United States v. Hubbard,* 650 F.2d 293, 304–06 (D.C.Cir.1980) (citing *Whalen* for the proposition that there are constitutionally protected spheres of personal privacy); *Doe v. Webster,* 606 F.2d 1226, 1238 n. 49 (D.C.Cir.1979) (suggesting that a right to privacy could be violated by the government's collection and dissemination of criminal information); *Utz v. Cullinane,* 520 F.2d 467, 482 n. 41 (D.C.Cir. 1975) ( "[I]t would appear that there is another constitutional right which might be impaired by the dissemination of preconviction or post-exoneration arrest data for other than law enforcement purposes—the right of privacy."). In another case alluding to the question, *Doe v. DiGenova,* 779 F.2d 74 (D.C.Cir.1985), Judge Starr referred in a concurrence to the putative right as a "novel constitutional right[ ] of dubious applicability." *Id.* at 92 (Starr, J., concurring). The majority, in response, stated only that it was

declining to address the merits of the appellant's constitutional claim. *Id.* at 90 n. 27.

Finally, several of our sister circuits have concluded based on *Whalen* and *Nixon* that there is a constitutional right to privacy in the nondisclosure of personal information. *See United States v. Westinghouse Electric Corp.,* 638 F.2d 570, 577–580 (3d Cir.1980) (holding that there is a constitutional right to privacy of medical records kept by an employer, but that the government's interest in protecting the safety of employees was sufficient to permit their examination); *Plante v. Gonzalez,* 575 F.2d 1119, 1132, 1134 (5th Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979) (identifying a "right to confidentiality" and holding that balancing is necessary to weigh intrusions); *Barry v. City of New York,* 712 F.2d 1554, 1559 (2d Cir.1983), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983) (applying an intermediate standard of review to uphold a financial disclosure requirement). *See also, Hawaii Psychiatric Soc'y Dist. Branch v. Ariyoshi,* 481 F.Supp. 1028, 1043 (D.Hawai'i 1979) (holding that disclosure of psychiatric records implicates the constitutional right to confidentiality); *McKenna v. Fargo,* 451 F.Supp. 1355, 1381 (D.N.J.1978) ("The analysis in *Whalen* ... compels the conclusion that the defendant ... must justify the burden imposed on the constitutional right of privacy by the required psychological evaluations."). The Sixth Circuit, which until today was alone among the courts of appeals, has been dubious. In *J.P. v. DeSanti,* 653 F.2d 1080, 1090 (6th Cir.1981), the court stated,

"Virtually every governmental action interferes with personal privacy to some degree." *Katz v. United States,* 389 U.S. at 350 n. 5, 88 S.Ct. at 510 n. 5. Courts called upon to balance virtually every government action against the corresponding intrusion on individual privacy may be able to give all privacy interests only cursory protection. The Framers .... cannot have intended that the federal courts become involved in an inquiry nearly as broad balancing almost every act of government, both state and federal, against its intrusion on a concept so vague, undefina-

ble, and all-encompassing as individual privacy.

Inferring very broad "constitutional" rights where the Constitution itself does not express them is an activity not appropriate to the judiciary. In this context, we note that of the cases cited holding that there is a constitutional right to nondisclosure of private information, none cites a constitutional provision in support of its holding. It is understandable, though rare, to fail to cite a supporting provision of the Constitution when one is dealing with such well-established rights as those in the first or fourth amendments. It is quite a telling failure when the constitutional right at issue is not well-established.

The court determined, "Absent a clear indication from the Supreme Court we will not construe isolated statements in *Whalen* and *Nixon* more broadly than their context allows to recognize a general constitutional right to have disclosure of private information measured against the need for disclosure." *Id.* at 1089. *See also Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir.1994) (concluding that there is no general right to nondisclosure of private information).

■ Having noted that numerous uncertainties attend this issue, we decline to enter the fray by concluding that there is no such constitutional right because in this case that conclusion is unnecessary. Even assuming the right exists, the government has not violated it on the facts of this case. Whatever the precise contours of the supposed right, both agencies have presented sufficiently weighty interests in obtaining the information sought by the questionnaires to justify the intrusions into their employees' privacy.

■ To begin with, we hold that the individual interest in protecting the privacy of the information sought by the government is significantly less important where the information is collected by the government but not disseminated publicly. In fact, the employees could cite no case in which a court has found a violation of the constitutional right to privacy where the government has collected, but not disseminated, the information. In *Whalen,* for instance, the Court noted that mandatory disclosure of a patient's use of certain prescription drugs could lead to the information being publicly disseminated to the detriment of the patient's reputation. 429 U.S. at 600, 97 S.Ct. at 876–77. Fear of public disclosure might cause some patients to decline to obtain a prescription even where it was medically necessary. The Court noted that the state had enacted security provisions protecting the privacy of patients, and that there was no record evidence that the security provisions would prove insufficient. Accordingly, the Court held that unsubstantiated fear of public disclosure was not a sufficient reason for invalidating the statute. *See also Nixon,* 433 U.S. at 465, 97 S.Ct. at 2800–01 (relying on the archivists' unblemished record of discretion).

■ Here, as well, there are measures designed to protect the confidentiality of the employees' responses to questionnaires. The Privacy Act, 5 U.S.C. § 552a(b), states that no agency shall disclose any record, except where it has written consent from the individual or under certain limited exceptions, none of which would permit public dissemination of the information obtained here. In addition, the records are maintained under secure conditions. Those charged with maintaining the records are, themselves, subject to background checks. These measures, designed to protect the confidentiality of the information, substantially reduce the employees' privacy interests. Security precautions are never fool-proof, but where the government has enacted reasonable devices to secure the confidentiality of records we cannot, without grounds, assume that the devices will prove insufficient. *See Whalen,* 429 U.S. at 601–02, 97 S.Ct. at 877–78.

■ Given the employees' diminished interest in resisting disclosure in cases in which disclosure is not likely to lead to public dissemination, we conclude that the agencies have presented sufficiently important justifications for each item on the questionnaires. We turn first to the questions posed by the SF 85P and hold that HUD has adequately defended its need for the information. The employees in this case have access to confidential information about program beneficiaries. Within limits, the employees are able

to alter information within the database and to misdirect funds. The agency has presented evidence that an employee using illegal drugs is more likely to compromise the integrity of the computer database by making a negligent error. HUD has also determined that employees with a substance abuse history or a history of financial indiscretion are more likely to embezzle funds. The determination of "trustworthiness is an 'inexact science at best.'" *Greenberg,* 983 F.2d at 297 (Sentelle, J., concurring) (internal quotation omitted). When presented with a reasonable determination we are reluctant to second-guess the agencies' conclusions regarding the dangers associated with drug use or financial trouble among employees in public trust positions. As the Supreme Court stated in *Whalen,* "[Government action] which has some effect on individual liberty or privacy may not be held unconstitutional simply because a court finds it unnecessary, in whole or in part." 429 U.S. at 597, 97 S.Ct. at 875. We hold that HUD may constitutionally require employees to disclose prior drug use and financial history.

The release form required by HUD is more problematic, though not fatally so, because it is more far reaching. The district court held that "so vast an intrusion" cannot be justified in the absence of a direct threat to national security. We disagree that the release form "leaves nothing untouched." The government asserted, both in oral argument and in its brief, that the legitimate use of the release form is limited to verifying information solicited by other parts of the form. In addition, the Privacy Act requires that an agency "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). Therefore, the release authorizes the government to collect only information "relevant" to determining the fitness of an individual for a public trust position. Relying on the limitation that the release form authorizes the government to obtain only relevant information used to verify representations made by the employee, we hold that administration of the form is constitutional.

■■ We turn to the questions posed by the challenge to the DOD questionnaire. "[U]nder the Constitution the Executive must have the largely unshared duty to determine and preserve the degree of internal security necessary to exercise [national security powers] successfully." *New York Times Co. v. United States,* 403 U.S. 713, 728–29, 91 S.Ct. 2140, 2149, 29 L.Ed.2d 822 (1971) (Stewart, J., concurring). The drug use and financial history questions posed by DOD are slightly more intrusive than those asked by HUD, but the questions are the same in their material particulars. The release form is substantially identical. As the questions could constitutionally be required to protect the integrity of a computer database they are, *a fortiori,* constitutional when used in the interests of national security. DOD employees also challenged questions regarding the employees' mental health and expunged criminal history. No constitutional right of privacy is violated even by the disclosure "of an official act such as an arrest." *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). Questions concerning an employees' mental health, on the other hand, may solicit highly personal information. Nevertheless, we uphold the requirement consistent with our traditional reluctance to intrude on Executive decisionmaking in the area of national defense. *See, e.g., Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2445–46, 37 L.Ed.2d 407 (1973).

■ We are left with one remaining issue that is presented only in the case against DOD. The district court held that because the DD Forms do not guarantee that answers to the substance abuse question would not be used against the employee in subsequent criminal proceedings, the questions were unconstitutional under the Fifth Amendment. We disagree. As we held in *Greenberg,* the privilege against self-incrimination must be invoked. 983 F.2d at 291. "[T]he Fifth Amendment does not forbid the government from asking questions and it does not forbid the government from taking answers." *Id.* Instead, the Fifth Amendment prohibits use of that information in a subsequent criminal proceeding. There is no

indication in the record that the employees have a reasonable basis for a fear of criminal prosecution based on their answers to the DD Forms. Should a subsequent criminal proceeding ensue, that court could address whether answers were compelled or voluntary. If the answers are deemed compelled, the Fifth Amendment will, of its own force, prohibit use of the information in the proceeding.

## IV. CONCLUSION

We hold, therefore, that even assuming the existence of a constitutional right to avoid disclosure of personal information, the challenged questions in both cases are permissible. We also hold that the DD Forms do not violate the employees' Fifth Amendment right against self-incrimination. We accordingly reverse the district court.

*So ordered.*